[S. F. No. 2371.   In Bank.—January 28, 1902.]

THE PEOPLE ex rel. WILLIAM M. LAWLOR, Appellant, v. J. M. WILLIAMSON et al., Respondents.

QUO WARRANTO—MUNICIPAL BOARD OF HEALTH—"MUNICIPAL AFFAIR" —STATE BOARD.—*Quo warranto* will not lie in the name of the people upon relation of the health officer of the state board of health against the municipal board of health established under the charter of the city and county of San Francisco, to prevent them from exercising any powers. Municipal powers are conferred and municipal duties are imposed upon the municipal board by its charter; and that board, as to its municipal functions, is a "municipal affair," which the city may lawfully maintain.

ID.—QUESTIONS NOT INVOLVED.—The questions as to what powers and functions may still be exercised by the state board of health, and as to how far the municipal charter is subject to legislative control in the exercise of the police power under general laws, are not involved in such action of *quo warranto.*

ID.—INCONSISTENCY BETWEEN CODE PROVISIONS AND MUNICIPAL CHARTER. —In so far as the provisions of the charter are purely municipal in their character, any code provisions inconsistent therewith are to that extent superseded by the charter.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.  J. M. Troutt, Judge.

The facts are stated in the opinion of the court.

Tirey L. Ford, Attorney-General, J. L. Copeland, Frank M. Stone, and A. H. Ricketts, for Appellant.

Lewis F. Byington, District Attorney, for Respondents.

TEMPLE, J.—This is a proceeding in the nature of a *quo warranto* against the municipal board of health, under the present charter. The relator claims to be the health officer of what is called in the briefs the old board of health. That board consisted of the mayor of the city and county and four physicians, who were appointed by the governor. It was authorized by certain sections of the Political Code, and was called the board of health of the city and county of San Francisco. Such is also the designation of the board of health authorized by the new charter of the city and county. Counsel have argued the question as to whether the new charter supersedes and does away with the old board. But that question, if involved at all, is only incidentally at issue. The only question is as to the legality of the new, or municipal, board, and that is no further involved than is required to determine whether the respondents have usurped, and are now unlawfully exercising, the functions of members of the board of health of the city and county of San Francisco.

The sections of the Political Code providing for the old board are in an article entitled, "Health and Quarantine Regulations for the City and Harbor of San Francisco." The health officer for the city and county and port of San Francisco was elected by the board, and was removable at its pleasure. It could appoint a quarantine officer, and prescribe his duties, and also the duty of masters of vessels entering the harbor. It could make vaccination compulsory in certain cases, and provide hospitals "at or near Sausalito, and furnish and supply the same with nurses and attachés, and remove thereto all persons affected with cholera, smallpox, yellow, typhus, or ship fever." The members of this board have been held to be state officers. (*Ex parte Kenney,* 84 Cal. 304; *People* v. *Perry,* 79 Cal. 110.) The provisions in regard to public health contained in the city charter are found in article X. A board of health for the city and county is created with the following powers: "The board shall have the management and control of the city and county hospital, almshouses, ambulance service, municipal hospitals, receiving hospitals, and of all matters pertaining to the preservation, promotion, and protection of the lives and health of the inhabitants of the city and county; and it may determine the nature and character of nuisances and provide for their abatement.

It shall have the sanitary supervision of the municipal institutions of the city and county, including jails, schoolhouses and all public buildings; of the disposition of the dead; of the disposition of garbage, offal, and other offensive substances.''

It is evident that the powers conferred upon and the duties required of this board are strictly municipal in their character. All that is required of the board is peculiarly for the inhabitants of the city, and not directly for the benefit of any one else. As to some of the functions of the board, a charter which did not in some way provide for them, directly or indirectly, by permitting the legislative body of the city to make provision, would be intolerable. It may be safely asserted that no such charter exists, and that all that is here provided for is usually provided or permitted in the charters of large cities.

This board, with its functions, being in its nature an ''affair'' appropriate for a municipality, and being actually contained in the charter, is a ''municipal affair,'' within the meaning heretofore given to the phrase ''municipal affair.'' The suggestion that an ''affair'' already existing under the laws of the state, and for the people generally, including the inhabitants of the city, cannot be made a municipal ''affair,'' does not seem to me to merit discussion. The charter supersedes all laws inconsistent therewith. I do not wish to intimate a doubt as to the entire validity of the charter provisions on this subject; but for the purposes of this case it is not necessary to decide whether some of its provisions are not void because inconsistent with the code provisions. If there is anything which the charter board can lawfully do, the city may maintain it.

The reply brief, filed by other counsel for the attorney-general, while in form insisting upon the argument of the opening brief, in fact concedes its insufficiency, and contends that the charter provisions are void, because, if valid, the state would be, *pro tanto,* deprived of its police power. The point is, that, if a law, the charter cannot be repealed, amended, or interfered with by the legislature, and so far prevents the state from protecting the public health. San Francisco, it is said, is our principal seaport, and liable to receive from abroad persons affected with infectious diseases, and who are a source of danger to the entire population of the state.

The charter is itself a law of the state. It matters not for this purpose whether it is a statute passed by the legislature or by a board of freeholders with a referendum to the people. In either view it is law, and made so by authority of the people of the state. We must presume, if these provisions are valid, that in creating the charter and making it a law, the people have adopted the means, in their judgment, likely to protect the people of the state from such dangers.

Nor is the charter a law which cannot be amended. It is true the legislature, of itself, cannot amend it. Such amendments must be initiated elsewhere. It was made and can be amended as the people have ordained in the organic law. The fact that the constitution has so provided must satisfy the courts.

It may be true that the freeholder charter scheme confers greater influence in legislative matters upon the inhabitants of the favored cities than is enjoyed by the people who do not reside in such cities. The inhabitants of the favored cities may participate in making laws for others which have no operation at all as to them, while the outsider, after the charter has been once made, has no voice in making such laws for those within the city, even when he is vitally and directly interested in them. But if this be an inequality, the people have themselves created it, and if a remedy is needed, they only can provide it.

But the police powers granted to the city and county by the charter are much more extensive than those confided to the charter board of health. Nearly all the ultimate purposes for which governments exist come within this power. It has even been said that it includes all the ends of government, as all are, in theory, designed to secure the common safety, and to provide for the general welfare. (Tiedeman's Police Power, p. 3.) Cooley defines this power as including the whole system of internal regulation by which the state seeks not only to preserve the public order and to prevent offenses against the state, but also to establish for the intercourse of citizens with citizens those rules of good manners and good neighborhood which are calculated to prevent conflict of rights, and to secure to each the uninterrupted enjoyment of his own, so far as it is reasonably consistent with a like enjoyment of rights by others.

The police power more specifically refers to the necessity and right of government to place restrictions upon the liberty of individuals, or upon the use of private property for the common advantage. All these things enumerated by Cooley are usually confided, at least in part, to municipalities, and are certainly in the charter in question here. If, therefore, the provisions creating the board of health are void because it is an attempt to surrender police powers which the state cannot abdicate, then the entire charter must go.

But this consequence would not follow, even though the state were not authorized to make a final surrender of powers it holds for the benefit of all the inhabitants of the state. In such case the law would not be invalid, but would give way when the state found it necessary to exercise the same power for the preservation of the health of the people. In the case supposed the consequence would simply be, that the charter would be found not to be beyond legislative control.

As I have said, we have in this case nothing to do with the former board. We are neither required nor authorized to determine in this case whether such board still continues in existence, or, if it does still exist, what powers and functions are left to it. The charter board certainly has some of the powers which the charter confers upon it, and if to any extent the code sections creating the former board are inconsistent with the valid grant of power conferred by the charter, to that extent they are superseded by the charter.

The judgment is affirmed.

Henshaw, J., and Beatty, C. J., concurred.

VAN DYKE, J., concurring.—The provisions of the freeholders' charter on the subject of public health concerns "municipal affairs." In fact, it would be a strange thing for a city government not to be clothed with power to deal with matters relating to the health of its inhabitants. By general law of this state for the government of cities not organized under special or freeholders' charters, power is conferred upon the common council of every such city "to establish a board of health to prevent the introduction and spread of disease." (Pol. Code, sec. 4408, subd. 18.) It is quite true that the preservation of health concerns the whole state as well as the

city. In such matters it may be found necessary for the state, by general laws operating outside as well as in cities, to provide against the spread of contagious diseases and like matters. The state board of health, organized under the provisions of the Political Code, has jurisdiction coextensive with the bay and harbor of San Francisco, and the quarantine grounds for the same are located at Sausalito, in Marin County. (Pol. Code, sec. 3004.)

I can see no reason, therefore, why the charter provisions are not valid, and if there be any laws inconsistent therewith, they are, by the plain terms of the constitution, to that extent superseded.

McFARLAND, J., concurring.—I concur in the judgment of affirmance, on the ground that it does not appear that the charter board of health is an illegal body or is wrongfully usurping powers. It may do many things not inconsistent with the powers granted by the state to the old board. But, in my opinion, the public health is a matter in which the whole people of the state are concerned; and as the preservation of the public health of all the people depends upon proper regulations in every part of the state, the legislature has power to pass laws on that subject enforceable in every nook and corner of our territory, including those localities embraced within the municipalities as well as the most sparsely settled agricultural or mining districts. And, in my opinion, whenever the provisions of a municipality, by charter or otherwise, on the subject of public health conflict with laws of the legislature on that subject, the former must yield, because "in conflict with general laws." The public health is not a "municipal affair" in the sense of excluding the jurisdiction of the state over the subject. But there is a wide scope for municipal action on this subject not inconsistent with general laws.

HARRISON, J., concurring. — I concur in affirming the judgment. The only question to be determined is whether the complaint shows that the members of the board of health authorized by the charter of San Francisco have "usurped, intruded into, or unlawfully hold or exercise any public office." If that board of health has a legal existence, its mem-

bers cannot be said to have either usurped or intruded into any public office, or to unlawfully hold or exercise such office. The supervision and control of the sanitary condition of a city, and provision for the health of its inhabitants, are, as is shown in the opinion of Mr. Justice Temple, eminently a "municipal affair"; and the establishment of a board of health which shall have the management and control of that "affair" is an appropriate provision of a municipal charter. To the extent that the provisions of the charter upon this subject are within this "municipal affair," to that extent the board of health created by the charter is not an illegal body. Whether any of the provisions of the charter upon this subject are inconsistent with the general laws of the state, or whether there are provisions in the general laws which are not covered by the provisions of the charter, is not involved in this case.

Neither are we now called upon to define the respective authority of the board of health created by the charter and of that authorized by the Political Code. So long as the functions to be exercised by the respective boards are not identical, there can be no inconsistency in permitting each to perform the functions prescribed for it; but to the extent that the functions prescribed for the one authorized by the Political Code are of a municipal character, those provisions have been superseded by the charter.

Garoutte, J., concurred with Harrison, J.