[Civ. No. 9279. First Appellate District, Division Two.—November 9, 1934.]

W. H. SNELL, Appellant, v. LEWIS F. BYINGTON et al., Respondents.

John J. Dailey for Appellant.

John J. O'Toole, City Attorney, and Dion R. Holm, Assistant City Attorney, for Respondents.

STURTEVANT, J.—The city and county of San Francisco is operating under and governed by a charter which took effect January 8, 1932. (Stats. 1931, p. 2973.) For some years it has been engaged in constructing a water system known as the Hetch Hetchy Project under which it is preparing to bring, through pipes, tunnels, etc., water from the Sierra Nevada Mountains to San Francisco. In 1932, it was engaged in boring certain tunnels in Alameda County. To do that construction work it let a contract to Hetch Hetchy Project Department, a municipal agency. It entered upon the performance of its contract and, at the time this action was commenced, it had approximately seven hundred and fifty employees — about four-fifths of whom were laborers and the others engineers, inspectors, etc. When the world-wide depression was affecting all lines of business an amendment to the charter was adopted which is known as section 70.1. (Stats. 1933, p. 3049.) After the amendment took effect the board of supervisors, acting thereunder, adopted a resolution reducing compensation of the officers and employees as provided in said section 70.1. Thereafter a controversy arose as to whether said section and the resolution adopted thereunder were applicable to the said employees and officers so engaged in the construction work being done in Alameda County. For the purpose

of settling that controversy W. H. Snell, one of the employees, commenced this action in behalf of himself and all other employees of said Hetch Hetchy Project Department who are working exclusively on said construction work. The plaintiff's complaint purports to state a cause of action asking for declaratory relief. (Code Civ. Proc., sec. 1060 et seq.) The fiscal officers were named as defendants and appeared and filed a general demurrer. It was sustained and, the plaintiff declining to amend, a judgment in favor of the defendants was entered. From that judgment the plaintiff has appealed.

The case presents but one point and that is a question of statutory construction. The plaintiff contends that neither he nor any other of the employees of said Hetch Hetchy Project Department who are working outside of the city and county of San Francisco and employed exclusively on said aqueduct and tunnel construction work are subject to the provisions of said section 70.1 of the charter or to the salary and wage percentage deduction therein scheduled. On the other hand the defendants contend that the plaintiff and all other employees of the Hetch Hetchy Project Department are included within the terms of the statute, whether they are working inside of San Francisco or outside. The pertinent parts of section 70.1 are as follows:

"Section 70.1. Whenever, in the judgment of the Mayor and the Board of Supervisors, extraordinary economic conditions actually exist due to unemployment, fire, earthquake, flood or other calamity, which adversely affect the life, health and welfare of the citizens of the city and county or of any considerable portion thereof, the Board of Supervisors, by a three-fourths vote of all of its members, with the concurrence of the Mayor, shall have power as follows, to-wit: . . .

"Sub. 2. To provide that while said emergency as declared shall continue to exist there shall be deducted from the gross salaries and compensations, exclusive of pension and retirement allowances, *of each officer and employee* of the City and County of San Francisco, including officers and employees of the Board of Education, not more than the respective amounts hereinafter set forth. . . .

"If said salary and compensation deductions are not reflected in the annual budget and appropriation ordinances, as set forth in subdivision 3 of this section, the amount of said deductions shall be used for the purpose of meeting or alleviating the emergency which has been declared, or to balance any deficiency existing in the general funds of the City arising by reason of the delinquency in the payment of taxes or other revenue as compared with the anticipated revenues over the same period. Provided that where salaries or compensations are paid out of bond funds, utility funds, or other trust funds, which are not provided from the revenues of the City, all deductions made shall revert to the respective funds from which said salaries or compensations are paid. . . .

"Sub. 6. During the period that any emergency shall exist after being so determined as hereinbefore provided, the Controller, with the approval of the Mayor and the Board of Supervisors, may reallocate any unencumbered balance, or any part thereof, to the credit of any department or office exclusive of moneys or appropriations made or required to be made to any bond, bond interest, bond redemption, pension, utility, or trust fund, so that the same shall be available to meet the necessities of said emergency, irrespective as to whether the amount allocated to said department or office is fixed by this Charter or is the result of a tax provided by said Charter to be levied for said department. . . .

"The provisions of this section shall have precedence over conflicting provisions of this Charter, but nothing herein contained shall adversely affect the rights of the officials and employees as set forth in section 71 of the Charter, during the period when no public emergency exists. . . . " (Italics ours.)

The plaintiff states that: "The Hetch Hetchy Project Department is engaged in the construction of these tunnels under a contract awarded the department by the Public Utilities Commission and so awarded at a time when the wages of the employees engaged in the work had already been fixed." The fact that the wages had been fixed is not helpful. The same statement could be made regarding any other employee in the services of San Francisco. It is alleged in the complaint that about four-fifths of the employees are working on a wage resting on a daily or hourly

basis and that the others are working on a salary or wage resting on a monthly basis. No fact is stated showing that any one of the employees or officers is, or was, working on a term contract. He also states that: ''The cost of the tunnel construction work is not paid from the proceeds of taxes, but is paid from funds realized from bonds which had already been sold and the proceeds deposited in the treasury before the contract was awarded.'' This statement is not helpful. The provisions of section 70.1 are broad and general and contain no limitation showing that the employees therein mentioned were not to include those who were paid out of a bond fund or other special fund. The last excerpt which we have quoted from subdivision 2, and especially the latter part thereof, contains a clear intimation that no such limitation was implied or intended. It is next asserted that: ''The employees of the Hetch Hetchy Project Department are not regular employees of the City and County; they have no civil service standing as such; and they are employees of the department specially employed in the carrying out of the contract awarded.'' Turning back to the portions quoted from section 70.1, it will be noted that there is no language limiting the operation of the statute to only such employees as may be said to be ''regular'', having ''civil service standing'', and those ''specially employed''. Again it is stated by the plaintiff that: ''The emergency situation to be relieved by the amendment is not affected in the slightest by the continued payment to these employees of the wages as heretofore fixed.'' With this statement we do not agree. If the reductions are made, the total of those reductions will serve to augment the bond fund where they will remain. If that bond fund is not exhausted and if additional costs become necessary no tax will be required to supplement it. If that bond fund in the end contains a surplus such surplus can be used to pay off bonds and interest thereon and the taxpayers will not be taxed to accumulate a fund for those purposes. Either one of these reasons is entirely sufficient, in the absence of an express provision contained in the statute, justifying a holding that the broad language of the statute was adopted for the express purpose of covering those who occupy the status of the plaintiff and his associates. The last claim made by the plaintiff is that: ''The reduction in wages sought to be imposed on these employees is not the result of action

taken by the Hetch Hetchy Project Department or by the Public Utilities Commission to reduce wages, but is claimed to be mandatory under the provisions of subdivision 6 of the amendment.'' The defendants reply to that contention as follows: ''This argument is quite true. The amendment under consideration passed by a majority of the voters who by a similar vote created the Hetch Hetchy Project Department and the Public Utilities Commission enacted in paragraph 2 of subdivision 6 of section 70.1 of the charter that 'the provisions of this section shall have precedence over conflicting provisions of this charter . . . ', so that what the Hetch Hetchy Project Department or the Public Utilities Commission may or may not have done in recommending salaries to be paid is of no consequence, as the people have made it mandatory that all salaries and wages of city employees be reduced.'' With that reply we fully concur. The plaintiff cites several decisions which state principles of law to govern the courts in construing statutes. Among others he quotes from *Dillingham* v. *Welch*, 179 Cal. 656, where on page 658 [178 Pac. 512], the court said: ''The statute, like all statutes, must be read in view of the evident purpose of the legislature in its enactment.'' In all that we have said above we think we have but followed the rule as so stated. However, as we see the matter the rule which we are inclined to apply is that stated in *Davis* v. *Hart*, 123 Cal. 384 [55 Pac. 1060]. On page 387, Mr. Justice Temple, writing the opinion of the court, stated: ''A cardinal rule of interpretation is that a statute free from ambiguity and uncertainty needs no interpretation. This must be so, for all interpretation and construction is for the purpose of ascertaining the legislative will. When this is clear, interpretation is not allowable.'' So in the instant case, picking up the amendment (sec. 70.1) by its four corners and reading it with due care, we think it is entirely clear and beyond debate that in enacting the amendment the people were providing for retrenchment in their employment costs and that they did not provide nor intend to provide any exceptions.

We find no error in the record. The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 7, 1935.