[S. F. No. 16017. In Bank.—September 2, 1938.]

CHARLES T. BUTTERWORTH et al., Petitioners, v. HAROLD J. BOYD, as Controller, etc., et al., Respondents.

Cushing & Cushing and Ben C. Duniway for Petitioners.

William P. O'Brien, as *Amicus Curiae,* on Behalf of Petitioners.

John J. O'Toole, City Attorney, Thomas P. Slevin, Deputy City Attorney, and Frank L. Fenton for Respondents.

Joseph McInerney, Vladimir Vucinich, Charles H. Brennan, O'Brien, Dibert & Acton, Lillian M. Wollitz, U. S. Webb, Attorney-General, and Lionel Browne and Neil Cunningham, Deputies Attorney-General, as *Amici Curiae,* on Behalf of Repondents.

THE COURT.—This is a petition for a writ of mandate to compel respondents, the controller and treasurer of the city and county of San Francisco, to make available to petitioners certain funds deducted from the compensation of employees and teachers in San Francisco under the Health Service System established by charter amendment in 1937.

The proposal to establish a system of health service for city employees, upon payment of small, fixed monthly sums, was first submitted to a referendum vote of such employees, who declared themselves in favor of it by a vote of 7,428 to 939. Thereafter the charter amendment was submitted to the electorate by the board of supervisors, and upon approval by a vote of the people, became effective by concurrent resolution of the legislature on April 14, 1937. (Stats. 1937, p. 2781.)

The amendment adds section 172.1 to the Charter of the City and County of San Francisco. Its chief provisions are as follows:

1. A "health service system" for municipal employees is established, to be administered by a "Health Service Board". The board consists of nine members, elected by members of the system for three-year terms at elections supervised by the registrar of voters. Each board member gives a $10,000 bond, the premium being paid from funds of the system. (Subds. 1, 2.)

2. The "members of the system" are (1) all employees of the city and county who are members of the retirement system, and (2) all teachers and employees of the board of education who are members of the retirement system. Exemptions, however, are permitted as follows: (1) "Any employee who adheres to the faith or teachings of any recognized religious sect, denomination or organization and, in accordance with its creed, tenets or principles, depends for healing upon prayer in the practice of religion shall be exempted from the system upon filing annually with the Health Service Board an affidavit stating such adherence and dependence and disclaiming any benefits under the system." (2) The board "shall have the power to exempt" any person whose annual compensation exceeds $4,500, and (3) any person "who has otherwise provided for adequate medical care". For the purposes of the first election, all employees eligible for membership are deemed members. (Subds. 1, 2.)

3. The board has power, by a two-thirds vote of its members, "to adopt a plan or plans for rendering medical care to the members of the system, or for the indemnification of the costs of said care, or for obtaining and carrying insurance against such costs". The board is further empowered to

put the said plans into effect and administer them; to make rules and regulations for transaction of its business, granting of exemptions, and admission to the system of members; and to appoint and fix the compensation of a secretary and other employees, to hold office at the pleasure of the board. (Subd. 3.)

4. The board has power "to make provision for the participation in the benefits of the system by the dependents of members, retired municipal employees and temporary municipal employees, provided that such participation shall be without cost to the city and county". (Subd. 3.)

5. The board "shall determine and certify to the controller" the monthly sum to be paid by members of the system into its fund, and the controller "shall deduct said sums from the compensation of the members" aud deposit them with the treasurer of the city and county to the credit and for the use of the system. "Such deductions shall not be deemed to be a reduction of compensation under any provision of this charter." The board has control over the administration and investment of the funds, provided that all investments "shall be of the character legal for insurance companies in California". Disbursements may be made only upon audit by the controller, who exercises the same accounting and auditing powers as the charter gives him over other municipal boards, officers and commissioners. (Subd. 4.)

6. "Members of the system shall have and possess no claim or recourse against any of the funds of the municipality by virtue of the adoption or operation of any plan for rendering medical care, indemnifying costs of said care or carrying insurance against such costs, but the claim and recourse of any such member shall be limited solely to the funds of the system. All expenses of the system shall be borne exclusively by the funds of the system and the city and county shall not appropriate or contribute funds in any manner for the purposes of the system hereby established and provided." (Subd. 6.)

7. "The term 'medical care' shall include the services of physicians, surgeons, nurses, persons licensed to treat human diseases without the use of drugs, hospitalization, medicines and appliances and dental, optical and other medical treatments and services." All such services "shall be

performed in accordance with the provisions as to professional conduct'' prescribed by the state law. Members are not entitled to medical care in the municipal health and hospital facilities, except ordinary emergency service. (Subd. 5.)

8. No member is required to accept the services or medical supplies of any practitioner or hospital selected by the board, but ''subject to the rules and regulations of the board'', any member may ''select of his own choice'' any duly licensed physician, etc., and the board ''shall make provision for the exercise of such choice, and is hereby expressly prohibited from entering into any exclusive contract for the rendering of such services''. The only restrictions on the power of choice are (1) it is ''subject to the rules and regulations of the board''; (2) the doctor or hospital chosen must render the services ''pursuant to said rules and regulations''; and (3) the services or supplies must be furnished ''at uniform rates of compensation to be fixed by the board''. Such rates, and any contract respecting the rendering of such services, is subject to review by, and requires the approval of the retirement board of the city and county.

Pursuant to the powers conferred by the charter amendment, an election was held on May 8, 1937, at which the petitioners were chosen as the members of the Health Service Board. They commenced performance of their duties, and after some nine months of study and consultation with professional advisers, adopted ''Plan No. 1'' for the rendition of medical services, and rules and regulations to carry it into effect.

Following the adoption of the plan, the board determined upon the sum of $2.50 as the monthly deduction from compensation of members of the system, payable commencing March 15, 1938. This was certified to respondent controller, who made the deductions, but refused to make the funds available to petitioners until the legality of the charter provision was determined. Respondent treasurer likewise refused to make disbursements of funds for the same reasons. Accordingly petitioners sought relief in this court, and an alternative writ of mandate issued. Respondents filed a demurrer to the petition, and the matter is presented solely on questions of law. Counsel for respondents and various *amici curiae* make a number of contentions of unconstitu-

tionality and alleged conflict with state law, and also attack the project as arbitrary and special legislation. ▮ It is a familiar observation that the courts are not concerned with the policy of duly enacted laws, but only with their validity; and in our opinion the present legislation violates no constitutional guaranties. But it may be pointed out, in this connection, that the overwhelming vote of city employees in favor of the measure was matched by the reception of the plan by the members of the medical profession. Over a thousand physicians, a majority of the licensed practitioners in the city, and nearly all of the city's hospitals, agreed to furnish services under the plan. And petitioners' brief states that among those who have joined the staffs are the president of the State Board of Health, the president of the California State Medical Association and past presidents of that association, the president of the San Francisco County Medical Society and several past presidents of that society, the president of the American College of Physicians, and leading members of the staffs of the medical schools of the University of California and Stanford University.

The first question is whether the city may by its charter provide for a regulation of this character. The answer to the question depends on whether the establishment of the health service system is a "municipal affair".

▮ Under the provisions of article XI, section 8, of the California Constitution, a city or city and county having a freeholders' charter adopted pursuant to said section has the power of "municipal home rule". The section provides: "It shall be competent in any charter framed under the authority of this section to provide that the municipality governed thereunder may make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in their several charters, and in respect to other matters they shall be subject to general laws." In the early stages of municipal home rule in California, the charter prevailed only where it expressly covered the particular power exercised. Under the liberalizing constitutional amendment of 1914, the charter is not a grant of power but a restriction only, and the municipality is supreme in the field of municipal affairs even as to matters on which the charter is silent. The history of the movement

has been fully covered in decisions and law review comments, and need not be repeated here. (See *Bank* v. *Bell*, 62 Cal. App. 320 [217 Pac. 538]; 15 Cal. L. Rev. 60; 11 Cal. L. Rev. 446.)

The purpose of the constitutional provisions was to make municipalities self-governing and free from legislative interference with respect to matters of local or internal concern. "It was to enable municipalities to conduct their own business and control their own affairs, to the fullest possible extent in their own way. It was enacted upon the principle that the municipality itself knew better what it wanted and needed than the state at large, and to give that municipality the exclusive privilege and right to enact direct legislation which would carry out and satisfy its wants and needs." (*Fragley* v. *Phelan*, 126 Cal. 383, 387 [58 Pac. 923].) No exact definition of the term "municipal affairs" can be formulated, and the courts have made no attempt to do so, but instead have indicated that judicial interpretation is necessary to give it meaning in each controverted case. The comprehensive nature of the power is, however, conceded in all the decisions, and it is recognized that it is not fixed but fluctuates in scope, and that changes in conditions make necessary new and broader applications thereof. (See *Bank* v. *Bell*, *supra*; 15 Cal. L. Rev. 60; 11 Cal. L. Rev. 94, 446.)

In applying these principles, the following activities, similar to that under consideration here, have been held to be municipal affairs and hence within the city's legislative power: Providing for the compensation of a municipal officer or employee, irrespective of whether the duties of the office are exacted by the charter or imposed by state law. (*Trefts* v. *McDougald*, 15 Cal. App. 584, 587 [115 Pac. 655]; *Popper* v. *Broderick*, 123 Cal. 456 [56 Pac. 53].) Providing for removal of municipal officers. (*Scheafer* v. *Herman*, 172 Cal. 338 [155 Pac. 1084].) Providing for pay of municipal employees while absent on sick leave. (*Jackson* v. *Wilde*, 52 Cal. App. 259 [198 Pac. 822].) A pension or retirement system for municipal employees. (*Klench* v. *Board of Pension Fund Commrs.*, 79 Cal. App. 171, 179 [249 Pac. 46]; *Richards* v. *Wheeler*, 10 Cal. App. (2d) 108, 111 [51 Pac. (2d) 436].) Supervision of sanitary conditions in a city, and provision for the health of its inhabitants, by establish-

148

ment of a local board of health. (*People* v. *Williamson,* 135 Cal. 415, 421 [67 Pac. 504].) Protection of property and lives through the licensing and regulation of a private patrol system. (*In re Hitchcock,* 34 Cal. App. 111 [166 Pac. 849].) (See, also, 15 Cal. L. Rev. 60.)

There can be no question, under these authorities, of the power of the city to establish a system of medical service for its employees or their dependents. Proper medical attention, freely available to all such employees and such dependents, should have a direct and beneficial effect on their health, and therefore their efficiency. If a pension or retirement system, or provision for sick leave payments at the expense of the municipality is within the municipal power, the present plan, entirely self-supporting, and having a tendency to decrease sickness and lessen the expense of sick leave must equally be so.

With the municipal power to act in this field established, there remains only to consider briefly the specific details in which the plan is said to be invalid.

First it is contended that the charter sets up no standard for the expression "adequate medical care", in its provision for exemption of those who are already provided with such care. The contention is made that the lack of criteria for determining this question leaves the matter within the uncontrolled discretion of the board, which may destroy the whole plan by broadening the grounds of exemption, or may discriminate among the employees. It may be observed at the outset that at most this argument challenges the validity of this particular exemption provision alone, and is in no sense an attack on the system itself. The system is applicable to the great majority of the city's employees, and the comparatively few exemptions could be severed without destroying the general plan. (See *Bacon Service Corp.* v. *Huss,* 199 Cal. 21 [248 Pac. 235]; 22 Cal. L. Rev. 228.) But in truth the term is clear enough. As defined in subdivision 5 of the charter (see *supra*) it refers to the treatment by licensed doctors, etc., and in view of the great complexity and rapid changes in medical science it is neither desirable nor possible to set forth in a statute any detailed outline of particular services. This is one of the innumerable situations in which only the broadest type of standard may be

stated, and the details must be left to the expert administrative board or officer chosen to carry out the legislative direction. Terms equally general have been frequently upheld against objections of uncertainty, and standards equally broad have been sustained against the objection of undue delegation of legislative power. (See *People* v. *Globe Grain & Milling Co.,* 211 Cal. 121 [294 Pac. 3] ; *Tarpey* v. *McClure,* 190 Cal. 593 [213 Pac. 983] ; *People* v. *Monterey Fish Products Co.,* 195 Cal. 548 [234 Pac. 398, 38 A. L. R. 1186] ; *Dominguez Land Corp.* v. *Daugherty,* 196 Cal. 468 [238 Pac. 703] ; 19 Cal. L. Rev. 448; 15 Cal. L. Rev. 408.) ▉ The suggestion that the board, chosen by vote of members of the system, might, in disregard of the purposes for which it was created and in defiance of constitutional limitations, exercise its delegated powers in a discriminatory manner, is fully answered by numerous decisions of the courts. It is to be presumed that the board will exercise its powers in conformity with the requirements of the Constitution; and if it does act unfairly, the fault lies with the board and not the statute. Constitutional guaranties against arbitrary and discriminatory action are read into the law, and the courts will compel administrative officials to respect them. (*People* v. *Globe Grain & Milling Co., supra*; *Gaylord* v. *Pasadena,* 175 Cal. 433 [166 Pac. 348].)

▉ It is next contended that the amendment makes an unconstitutional delegation of legislative power to the board to perform municipal functions, in violation of article XI, section 13, of the California Constitution. But this section merely prohibits the legislature from interfering with the municipalities in respect of their municipal affairs, and has no application to the appointment of boards or officers pursuant to valid charter provisions. (*In re Pfahler,* 150 Cal. 71, 87 [88 Pac. 270, 11 Ann. Cas. 911, 11 L. R. A. (N. S.) 1092].)

▉ It is suggested that the charter provision is in conflict with the state Insurance Code in that it authorizes what is in effect an insurance business without a certificate of authority from the insurance commissioner ; and it is contended in this connection that the subject of insurance is of state-wide concern and not a municipal affair. Nothing of substance is contained in this last statement, for though insurance may be a matter of general concern, the health and efficiency

of city employees is a municipal affair; and a plan established by charter to safeguard the health, peace of mind and working efficiency of such employees is validly applied to them, though it might be entirely improper if applied to objects beyond the scope of municipal power. ■ A still more obvious answer to counsel's suggestion is that the Insurance Code deals with the private business of insurance, and neither expressly nor impliedly purports to regulate governmental activities of municipalities. It is of course a well-settled doctrine that general words in a statute which might have the effect of restricting governmental powers are to be construed as not applying to the state or subdivisions. (*Estate of Miller,* 5 Cal. (2d) 588 [55 Pac. (2d) 491]; *Balthasar* v. *Pacific Elec. Ry. Co.,* 187 Cal. 302 [202 Pac. 37, 19 A. L. R. 452].) These same considerations dispose of the further contention that the charter permits the board to practice medicine in violation of the state Medical Practice Act.

■ It is next argued that the charter denies due process of law in providing for a compulsory deduction in an uncertain amount from the salaries of municipal employees. A conclusive answer is that no one has a vested right in his public employment except in so far as the right is conferred by statute or other valid regulation; that the employment is accepted under the terms and conditions fixed by law; and that one of the terms of the employment in the present case is the provision for the benefits of the health service system at the charge imposed therefor. The charter governs the salaries of city employees; by the amendment to the charter, in force at the time the municipal salaries were fixed for the current fiscal year, the deduction was authorized and made accordingly. It is well settled that public employees have no vested right in any particular measure of compensation or benefits, and that these may be modified or reduced by the proper statutory authority. (*Pennie* v. *Reis,* 80 Cal. 266, 269 [22 Pac. 176]; *Snell* v. *Byington,* 2 Cal. App. (2d) 127 [37 Pac. (2d) 734]; *Casserly* v. *Oakland,* 6 Cal. (2d) 64 [56 Pac. (2d) 237].) ■ If salaries can be reduced it is certainly clear enough that compensation provisions may be modified by substituting for a fraction thereof the valuable protection of comprehensive medical service. It is immate-

rial that the amount of the deduction is not limited to a stated sum; it is limited to the amount necessary to carry out specific purposes. Obviously, the board must be given some leeway in fixing the amount in accordance with its experience; and the nature of the plan, in the light of economic studies, is such that the amounts will always be small in relation both to the total salaries and the benefits received. A safeguard against excessive exactions is found in the democratic control over the elective members of the board; and doubtless any attempt by the board to deprive employees of the substantial benefits of their compensation would be ground for redress in the courts.

It should not be forgotten, in this connection, that the deduction herein considered has none of the compulsory features of a tax, for no one is compelled to pay anything, unless he voluntarily seeks the public employment under the terms and conditions which the law imposes. (See *McAuliffe* v. *City of New Bedford*, 155 Mass. 216 [29 N. E. 517].)

 The further contention is made that the exemptions under the charter constitute a denial of equal protection of the law; but a mere glance discloses that the classification is reasonable and proper. For example, the power to exclude those receiving salaries of over $4,500, a small fraction of the employees, is based upon the reasonable legislative determination that such persons may be able to provide themselves with sufficient medical care. The exemption of those who rely on healing by prayer is designed to avoid interference with the free practice of religion. And the exemption of those who already have adequate medical care avoids the arbitrary imposition of the facilities of the system upon those who already have provided for equal facilities from another source.

 The next contention is that the plan cannot legally include the school teachers and others employed by the San Francisco School District, which, though it covers the same territory as the city and county, is a separate entity. This contention, if sustained, would only exclude this group of employees from the benefits of the system without affecting the validity of the plan itself; and the objection could only be properly raised by those whose rights were invaded by inclusion in the system. (See *People* v. *Perry*, 212 Cal. 186

[298 Pac. 19, 76 A. L. R. 1331].) We are satisfied, however, that the objection is, on the merits, unsound. The school system has been held to be a matter of general concern, rather than a municipal affair, and consequently is not committed to the exclusive control of local governments. But the cities may make local regulations beneficial to and in furtherance of the school system, provided that these provisions do not conflict with the general law. (*Whitmore* v. *Brown*, 207 Cal. 473 [279 Pac. 447]; *Esberg* v. *Badaracco*, 202 Cal. 110 [259 Pac. 730]; *Anderson* v. *Board of Education*, 126 Cal. App. 514 [15 Pac. (2d) 774, 16 Pac. (2d) 272].) The power thus to regulate the schools by charter provisions is in fact recognized and declared in the state School Code, section 5.405, which declares: "Nothing in this part shall be construed so as to repeal or negate any provisions concerning employees of school districts contained in the charter of any city, county, or city and county heretofore or hereafter adopted and approved in conformity with article XI of the constitution of this state." ▄▄▄ Certainly a regulation designed to promote the health and efficiency of teachers is in furtherance of the objects of the school system, and it does not conflict with any general law. The state law establishes teachers' tenure, but the charter does not affect tenure. It only provides for a deduction from the monthly salary, and it has been expressly held in this state that the tenure law does not carry with it any assurance against change in salary. Hence, just as in the case of other municipal employees, a reduction or modification of compensation impairs no vested rights. (*Abraham* v. *Sims*, 2 Cal. (2d) 698 [42 Pac. (2d) 1029]; *Emerson* v. *Board of Trustees*, 23 Cal. App. (2d) 432 [73 Pac. (2d) 935]; *Hodge* v. *Board of Education*, 22 Cal. App. (2d) 341 [70 Pac. (2d) 1009].)

▄▄▄ *Amici curiae* make the suggestion that the plan interferes with the freedom of religion, on the ground that it provides an exemption for employees believing in healing by prayer, and requires the employee to disclose his religion by filing of the affidavit making the exemption claim. It seems unnecessary to point out that there is no interference with the practice of religion in the mere disclosure of a particular faith to a board which has nothing to do with its practice. In no way does the charter permit the slightest

interference with the practice or belief in any religious faith. (See *Hamilton* v. *Regents of University of California*, 293 U. S. 245 [55 Sup. Ct. 197, 79 L. Ed. 343].)

Finally, we are told that some of the rules and regulations and practices of the board are, or may be arbitrary or discriminatory with respect to particular individuals. There is no reason to consider such a contention at this time, for the only issue before us is whether the charter amendment and the plan adopted thereunder are valid. If so, the respondents must release the money to the board in order that it may carry out its duties. If in the performance thereof, the rights of any individual are infringed, the regular procedure of the courts is available to test the action. It is premature and irrelevant to deal at this time with speculative future acts of the board which involve no present invasion of private rights. (See *People* v. *Globe Grain & Milling Co., supra.*)

There being no valid objection to the system and plan herein considered, it follows that respondents must perform the duties imposed upon them and make available to petitioners the funds collected.

Let the writ issue as prayed for.

HOUSER, J.—I concur in the judgment.

EDMONDS, J., Dissenting.—The charter provision of the City and County of San Francisco which is attacked in the present proceeding provides, in effect, for compulsory health insurance of municipal employees. It allows the Health Service Board, a private organization over which the city has no control, to order the city controller to deduct an amount to be determined by it from the compensation of each employee of the city and deposit such sum "with the treasurer of the City and County to the credit and for the use of the system". Certain persons shall be and others may be exempted from this requirement. The money taken from the employees' salaries may be paid out by the treasurer only upon "audit by the controller and the controller shall have and exercise the accounting and auditing powers over the funds of the system which are vested in him by this charter with respect to all other municipal boards, officers and commissions".

The city attorney contends that the amendment grants unlawful delegation of power to the Health Service Board. He relies upon section 13 of article XI of the Constitution of California, which provides, in part, that ''the legislature shall not delegate to any special commission, private corporation, company, association, or individual any power to make, control, appropriate, supervise or in any way interfere with any county, city, town or municipal improvement, money, property or effects. . . . '' The legislature in approving the charter amendment, in effect delegated to an association of individuals the power to make, control, appropriate and supervise certain property interfering with the operation of the municipality. This association, created neither by election of the city's voters nor appointment by its officers is given the authority to determine the amount of money to be taken by the controller from the salaries of the employees for the purpose of carrying on a non-public engagement, and further permits the use of the facilities of the offices of the registrar and treasurer for the purpose of administering that which is unquestionably not of a general public character.

If, notwithstanding the constitutional provision, the Health Service Board can lawfully carry out the plans it has undertaken, then innumerable organizations can be created for the purpose of carrying on cooperative enterprises of various kinds. It is said that the successful operation of the health service will increase the employees' peace of mind. Undoubtedly many municipal employees would feel that they had more social security if they could purchase groceries through a cooperative organization. Their economic status would be improved if they could secure housing through group purchasing power. But to set up such organizations with funds compulsorily taken from each employee's salary through the machinery of the city government constitutes, in my opinion, a violation of the constitutional provision.

The city attorney also claims that the health service plan is not a municipal affair but, on the contrary, is nothing more than a private engagement affording an opportunity for certain employees of the city and county to procure stated kinds of medical care for an amount to be fixed by the board selected by the employees to run the system. Such a program, he says, does not concern the government of the muni-

cipality. In *Bank* v. *Bell*, 62 Cal. App. 320 [217 Pac. 538], the court defined "a municipal affair" as follows: "In defining a 'municipal affair' it has been said that 'the true test is that which requires that the work should be *essentially public and for the general good of all of the inhabitants of the city*. It must not be undertaken merely for gain or for private objects. Gain or loss may incidentally follow, *but the purpose must be primarily to satisfy the need, or contribute to the convenience of the people of the city at large.* Within that sphere of action, novelty should impose no veto' *Sun Printing etc. Assn.* v. *New York*, 8 App. Div. 230 [40 N. Y. Supp. 607]." In *Fragley* v. *Phelan*, 126 Cal. 383, 387 [58 Pac. 923], it was held that " 'municipal affairs' as those words are used in the organic law, refer to the internal business affairs of a municipality". See, also, *In re Hitchcock*, 34 Cal. App. 111, 114 [166 Pac. 849].

All of the decisions construing the phrase "municipal affair" define it as referring to those things which are so intimately connected with the government of a municipality as to affect all of its people, or as including a city's right to compensate employees in addition to the amount of wages paid. But the health service plan neither affects all of the inhabitants of the city nor is it limited to employees. It includes dependents of employees related by consanguinity or marriage, retired city employees, retired school teachers, members of the board of education and employees of the public school system. Medical care is to be given by private physicians having no contractual relation with the city but acting solely for the Health Service Board, over which the city has no control. "Members of the system shall have and possess no claim or recourse against any of the funds of the municipality by virtue of the adoption or operation of any plan for rendering medical care . . . but the claim and recourse of any such member shall be limited solely to the funds of the system." It is, therefore, obvious that the plan has nothing to do with the public health, security, or general welfare. It is simply social health insurance for a restricted group of individuals who are compelled to participate in it.

For another reason, at least a portion of the charter provision is invalid. Section 172.1 of the charter requires all teachers to become members of the system. Membership in

.the system is made compulsory. School teachers are not employees of the city and county of San Francisco but of a school district, a governmental entity entirely separate from .the city and county. The teachers derive their credentials from the state, and their compensation from funds of the school district and the state. Under sections 8 and 8½ of article XI of the Constitution, a municipality is strictly limited to the enactment of laws in respect to "municipal affairs". The courts have frequently declared that the public school system of the state is not a "municipal affair" but a "state affair", a matter of general and not local concern. (*People* v. *Martz,* 2 Cal. (2d) 136, 138 [39 Pac. (2d) 422]; *Gerth* v. *Dominguez,* 1 Cal. (2d) 239, 242 [34 Pac. (2d) 135].)

. I am of the opinion that the writ should be denied.