Lloyd Owen HUMPHREYS, individually and as an officer of the South Los Altos Citizens Committee for the Preservation of Public Transportation, Herman L. Solomon, individually and as an officer of the Woodland Acres Association of Los Altos, Santa Clara County, Claire Bertolone, individually and as an officer of the Branch Line Commuters Association of Santa Clara County, Robert Orrick, individually and as an officer of the Citizens Committee for Public Transportation of Santa Clara County, Santa Clara and San Benito Counties Building and Construction Trades Council, an unincorporated association, Plaintiffs,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants,

and

Southern Pacific Company, County of Santa Clara, City of Los Altos, Intervening Defendants.

No. 42052.

United States District Court
N. D. California, S. D.

May 1, 1964.

Neyhart & Grodin, by Martin J. Rosen, San Francisco, Cal., for plaintiffs.

Robert B. Hummel, Antitrust Div., Dept. of Justice, Washington, D. C., for United States.

Leonard S. Goodman, Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission.

Charles W. Burkett, Robert L. Pierce, by Randolph Karr, San Francisco, Cal., for intervenor Southern Pacific Co.

Spencer M. Williams, County Counsel, by Gerald J. Thompson, Deputy County Counsel, San Jose, Cal., for intervening defendant County of Santa Clara.

Anthony A. Lagorio, Los Altos, Cal., for intervening defendant City of Los Altos.

Before HAMLIN, Circuit Judge, and HARRIS and WEIGEL, District Judges.

PER CURIAM.

After proceedings duly had, pursuant to Section 1(18)–(20) of the Interstate Commerce Act, 49 U.S.C.A. § 1 (18)–(20), the Interstate Commerce Commission made and filed its report and order approving in effect the abandonment by Southern Pacific Company of a portion of the Vasona Branch of its railroad, situated in Santa Clara County, California.

Several commuter associations and individuals who appeared in opposition to the abandonment proceedings together with the Santa Clara and San Benito

Counties Building and Construction Trades Council now claim to be aggrieved by the Commission's order and have filed the complaint in this cause, under the applicable provisions of Title 28 U.S. C.A., to enjoin, annul and set aside the Commission's report and order. The United States and the Commission answered the complaint. The former neither supported nor opposed the order of the Commission; the latter asked the court to dismiss the complaint and to sustain the decision and order of the Commission. The Southern Pacific Company, the County of Santa Clara and the City of Los Altos intervened as defendants.

A three-judge court was convened, following an initial presentation before a single judge on a motion for a temporary restraining order. The record we have before us consists of the pleadings, the order of the Interstate Commerce Commission made herein, the certified copy of the record before the Interstate Commerce Commission as well as the briefs and exhibits, the record made before this court on the motion for a temporary restraining order, and finally, we have been furnished with briefs and the cause has been orally argued and submitted.

On plaintiffs' motion for a temporary restraining order, the court found, after a lengthy hearing before the Honorable George B. Harris, that removal of tracks on the Vasona Branch Line of the Southern Pacific Railroad would cause irreparable damage to plaintiffs in the event a Three Judge Court should later sustain plaintiffs' contentions. Accordingly, the court restrained removal of tracks or any activity which would dismantle the railroad until such time as a decision on the merits should be handed down by the full court, convened under 28 U.S.C.A. § 2284.

 The issue before the court presently is to determine whether the report and order of the Interstate Commerce Commission, Division 3, made on September 23, 1963, which authorized the abandonment of the Vasona Branch Line, is supported by adequate findings of fact which are founded upon substantial evidence. Our review is necessarily a limited one. Interstate Commerce Comm. v. Union Pac. R. Co., 222 U.S. 541, 32 S.Ct. 108, 56 L.Ed. 308; Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 54 S.Ct. 692, 78 L.Ed. 1260; United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821; Village of Candor v. United States, D.C., 151 F.Supp. 889.

Plaintiffs, chiefly commuters from Los Gatos to San Francisco and members of the South Los Altos Citizens Committee for Preservation of Public Transportation, initiated this action in order to enjoin and set aside the report and order of Division 3 (Finance Docket No. 22009), which authorized Southern Pacific [1] to abandon a portion of its Vasona Branch Line in Santa Clara County. The dispute arises over the operation of two commuter trains which run five days a week between Vasona and San Francisco. The northbound morning train, No. 129, serves the early morning commuters and the southbound train, No. 132, returns them to their homes in Los Gatos or its environs. Approximately 170 persons are served on a daily basis by these trains.

In its conclusion which held that public convenience and necessity would be served by permitting abandonment, Division 3 made certain findings based on its own report or arising out of the report of the Hearing Examiner and the Finance Review Board, consisting of three members. (It is to be noted initially that the latter body, on reviewing the matter, reversed the Hearing Examiner and held that abandonment was not warranted.)

The findings of Division 3 were generally to the effect that the County of Santa Clara required a segment of the

---

1. The Interstate Commerce Commission shall be referred to hereinafter as I.C.C., the California Public Utilities Commission shall be referred to as P.U.C., and the Southern Pacific Railroad shall be referred to as S.P.

Vasona Branch line in order to construct a new Foothill Expressway over the railroad right of way, as well as an interchange between the expressway and the Junipero Serra freeway. Abandonment of the Vasona Branch would inconvenience a minimum of passengers since the Southern Pacific would continue to operate its trains over the main line between San Jose and San Francisco and the railroad would retain 85% of its regular passengers. During the years 1960 and 1961 the railroad lost $21,495 and $20,911 respectively and continued operation would impose a burden on interstate commerce. Division 3 found that commuters would not suffer severe hardship or inconvenience in a strictly local situation and accordingly sustained the petition for abandonment.

Plaintiffs have challenged the findings of the I.C.C. and contend they are not supported by substantial evidence as required by 5 U.S.C.A. § 1009(e) of the Administrative Procedure Act. They assert that the purported losses suffered by the Southern Pacific for 1960 and 1961 are not borne out by an accurate record of passenger revenue and they challenge the revenue predictions for the main line service based on an estimate of 85% retention of passengers and property tax savings.

Plaintiffs question the finding that continued operations will result in a burden on interstate commerce. They point out that the effort to abandon the line arose as an afterthought when Santa Clara County sought to condemn property for an expressway. Losses, if any, were small, they contend, and not such as to warrant abandonment under the standards of Colorado v. United States, 271 U.S. 153, 46 S.Ct. 452, 70 L.Ed. 878, especially in the light of net income of more than $50 million enjoyed by the Southern Pacific in 1961 (and greater revenue realized in the next two years). As against minimal losses, the commission had to weigh the convenience of 170 commuters, many of whom were absolutely dependent on train service and whose only alternative means of transportation would consume daily additional time of up to 1 hour 40 minutes and added monthly costs of $20.

In urging this court to make its order preventing abandonment, plaintiffs placed heavy reliance upon the three judge decision in State of North Carolina v. United States, D.C., 210 F.Supp. 675, with respect to the finding that the "Commission had applied erroneous legal standards in reaching those conclusions." The Court "disagreed with the Commission as to the kind of evidence required to support an order permitting discontinuance of an intrastate passenger train under Sec. 13A(2)."

The reversal by the Supreme Court in Southern Railway v. North Carolina, 376 U.S. 93, 84 S.Ct. 564, 11 L.Ed.2d 541, set at rest plaintiffs' hopes as predicated upon the earlier decision. It is our view that the I.C.C. applied the correct legal standard in the light of this recent pronouncement of the Supreme Court.

With respect to the primary issue, i. e., whether the findings of the Interstate Commerce Commission are adequate and are supported by substantial evidence: This court concludes and finds after a complete review of the record, including the certified copy of the transcript before the Commission, that there is sufficient evidence to support the findings.

Plaintiffs, if unsuccessful in obtaining an order annulling and enjoining the order of the I.C.C. request in the alternative that the court remand the cause to the Commission. They charge S.P. with bad faith based upon a series of applications and events centering around and relating to the alternative service to be provided by the railroad regarding train No. 132 (now numbered 134 on the main line schedule).

The hearing before the I.C.C. examiner and the ultimate disposition of the case disclose that great significance was placed on the fact that the 170 daily commuters on the Vasona Branch line would be well served by train No. 134 on the

main line, which stops at the several stations within short driving distances of the homes of the commuters. (As to the time required to reach stops at Sunnyvale, Mountain View and California Street, all of which are east of the homes of the commuters and necessitate crossing El Camino Real, the evidence indicates that traffic congestion will make the trip by car a slow one and will add perhaps 40 minutes or more per day to travel time.)

Ordinarily this court would refrain from lengthy excerpts from the record. However, the question of alternative service is necessarily so interwoven in the fabric of the Commission's findings, both expressly and impliedly, as to require more elaborate treatment of the testimony.

A review of the record, commencing July 9, 1962, before Examiner Thomas H. Patrick, discloses the following:

P. 74, telegram from Hon. Charles S. Gubser, Congressman:

" * * * please enter my strong protest against application for Southern Pacific to discontinue service between Palo Alto and Los Gatos. *Southern Pacific should be required to furnish comparable service if discontinuance allowed.* Curtailment of service is inconsistent with rapid growth and population increase of area. * * *" 1. 8 et seq.

P. 113, cross-examination of witness Jochner, S.P. expert, by Mr. Lewis:

" * * * you are testifying as a traffic expert. Can you tell us what transportation service will remain or may be substituted for that proposed to be discontinued?

"Yes. What we would propose to do, if this application were granted, is to operate trains 129 and 132 on our mainline between California Avenue and San Jose.

"And that is your idea of substituted service?

"That would provide facilities and seating space and so forth for the people who now use the branch line train." 1. 18 et seq. (Exh. 18, showing regular station stops, then placed in evidence.)

P. 147, cross-examination of witness Jochner:

" * * * you say that you are going to put on another train. You refer to it as another train that is going to be a substitute for the branch line train and actually it is simply the same old train that has been going all the time except that instead of going on the branch line it is going to be going through Palo Alto to San Jose, and I am correct?

"Yes.

"Is that actually a substitute for the service or is that just because you have to have some place to put the train?

"Mr. Karr: 'It is going to go, let's face it, that way.' Mr. Jochner: 'As I thought I explained before, it really will serve two purposes. It will continue to serve the people who now use the branch line train and it will also serve the people who now use the branch line train north of California Avenue.' " 1. 21 et seq.

P. 261, statement of John Lincoln, Mayor of Los Gatos:

"By motion of the council I was delegated to represent the Council and thereby the town of Los Gatos, and ask that the Southern Pacific not be allowed to discontinue the commute train service out of the Los Gatos area until such time as they are in a position to guarantee equal substitute service * * *" 1. 7 et seq.

P. 266, cross-examination of Lincoln by Mr. Karr:

"You are not opposed to the expressway plan?

" * * * If you are talking of the plan with regard to eliminating the railroads, the railroad into Los Gatos, I would say that I would be opposed to it *without substitute service.*" 1. 21 et seq.

P. 270, cross-examination of Mrs. Honig, commuter witness, with respect to substitute service made available by shift of Vasona Branch line to main line with stops as indicated:

"* * * Well, now, were you aware that Highway 9 over here (referring to Exhibit 4 map), is being widened to a four lane expressway? "Well, it's still further from my home to go Highway 9 and to go to Sunnyvale." 1. 19 et seq.

Thereafter, examiner suggested expressway trip of not more than twenty minutes and witness pointed out that price zone would be higher.

When Examiner Patrick signed his report in favor of abandonment on November 7, 1962, he stated, on p. 8, as follows:

"Upon abandonment of the Vasona branch line, applicant would shift trains 129 and 132 to the main line between California Avenue and San Jose, and thus afford present commuters service to and from San Francisco. The proposed schedule shows that train 132 would leave California Avenue at 5:58 p. m., and arrive(s) (sic) at San Jose at 6:22 p. m. stopping to detrain passengers at Mountain View, Sunnyvale and Santa Clara. * * * "

Again, in the Report of the Commission thru the Finance Review Board which reversed the examiner on March 13, 1963, and directed that an order be entered disallowing abandonment, the Board stated, p. 4, that:

"* * * the only passenger train affected by the abandonment (according to Southern Pacific), will be moved to the applicant's nearby main line to accommodate the people in the area where abandonment is proposed; * * * "

And again at p. 9:

"Upon abandonment of the Vasona Branch Line, applicant would operate trains 129 and 132 on its main line between California Avenue and San Jose. By so doing, applicant

expects to retain 85% of the passenger traffic now using trains 129 and 132. * * * "

Finally, in the decision of September 23, 1963, by Division 3, acting as an Appellate Division on a motion for reconsideration of the ruling of the Finance Review Board, the Commission stated, p. 3:

"Applicant proposes to continue the passenger trains over its main line between San Jose and San Francisco, via California Avenue. * * "

In discussing the matter of public convenience and necessity, and the inconvenience arising from the elimination of the service on the Vasona branch line, the Commission stated, p. 6:

"In this respect, we believe the evidence convincing that with the shift of the commuter trains to applicant's main line and with the other modes of transportation available there is little likelihood that the commuters will suffer severe hardships or serious inconveniences."

In concluding this paragraph, the Commission stated the basic reason for its decision to authorize abandonment—a decision which constitutes the crux of the case:

"The problem faced by the commuters is, in the final analysis, principally an outgrowth of local decisions made by duly elected or appointed officials in the area concerned, and which are believed to be of benefit and to the best interests of most of the citizens concerned. In our opinion, under such circumstances the loss and inconvenience imposed upon a limited number of commuters is not of sufficient significance to warrant denial of the certificate sought."

The Commission, as outlined above, placed great weight on the desire of Santa Clara County to build an expressway on the land covered by Southern Pacific tracks. It deemed such use, in effect, superior to that of a railway with but 170 daily commuters whose convenience and necessity were weighed against

the wishes of large numbers of automobile users who preferred to drive alone to work and who found highway conditions intolerable because of the heavy congestion on roads caused by the multiplicity of cars.

The Commission, relying on main line service of train 134, concluded that the commuters would not be sorely inconvenienced. The record is barren of any suggestion that Southern Pacific would seek to cut back on the service rendered. Yet, while the case was still pending, the railroad applied for reduction of 25% of its peninsula trains, including elimination of station stops which were cited as substitute service for Vasona branch passengers.

Not until October 9, 1963, some two weeks after Division 3 reversed the lower tribunal and authorized abandonment, did the Southern Pacific *amend* its schedule for train 134 by restoring stops at Mountain View and Sunnyvale (and removing Castro) in its application before the California Public Utilities Commission, previously filed in August. Thus at the present time S.P. is not requesting elimination of station stops which serve the commuters in the Los Gatos area (with the possible exception of Castro).

While the matter of station stops is within the jurisdiction of the P.U.C. the Court cannot refrain from noting that the I.C.C. placed great weight upon the evidence which supported the conclusion that substitute service would be assured commuters and that such service would include the several station stops on the main line nearest the communities previously served by train 132. The assumption was made not only by the several witnesses who appeared before the I.C.C. on behalf of the plaintiffs and the Southern Pacific, but also by Mr. Nichols who testified as a representative of the P.U.C. in connection with a recommendation that bus service be undertaken by the S.P. for the benefit of the commuters on the abandoned line. Implicit in the testimony of Mr. Nichols is the continued availability of station stops on the main line:

p. 428:

"* * * The application being considered here today is not based on the premise that the public convenience and necessity no longer requires the operation of passenger train service between points on the Vasona Branch and San Francisco, but rather that there exists a greater need for a vehicular expressway using the right of way of a portion of that branch. Southern Pacific is a public utility which is dedicated to provide passenger train commuter service between San Francisco, San Jose and its intermediate points, and including those points along the Vasona Branch. It is the position of the California Public Utilities Commission that the company should not be relieved of its responsibility to provide public transportation between the West Valley area and San Francisco, should this application be granted." 1. 19, et seq.

Thereafter, the witness referred to passengers boarding the trains at Loyola, Springer Road and the Los Altos stations and requested bus service to comparable points on the main line from these stops. After being cross-examined as to cost of such service, the witness conceded the railroad would lose money and stated:

"* * * the philosophy of rate making is that each individual segment of a public carrier's operation does not necessarily have to be profitable." p. 468, 1. 9 et seq.

In concluding, Mr. Nichols asked that the I.C.C., as a condition precedent to its granting the application for abandonment, require the S.P. to furnish bus service to the connecting stations, pointing out that the Commission has such power:

"I will recite Par. 20 of Part 1 of the Interstate Commerce Act, which specifically empowers the I.C.C. to attach whatever conditions on or restrictions to the granting of

certificates that they think is necessary because of public convenience and necessity." p. 472, 1. 16 et seq.

This colloquy took place at the conclusion of the presentation of the Public Utility proposal for connecting-bus service to the several stops on the main line. The objection of Mr. Karr (counsel for the S.P.) was directed toward such bus service rather than to the stops at the indicated stations on the main line. It was taken for granted that the commuters could utilize these stations if they could reach them in their own private cars.

In the light of this record, it was reasonable for all parties to assume that the railroad planned to provide alternative service, in the full sense, on the main line. Such service would necessarily include regular station stops. Plaintiffs' contention regarding S.P.'s radical change of position with respect to this service has virtually become moot by reason of the modification and amendment of its proposed schedule submitted to the P.U.C. on October 9, 1963. (S. P. amendment in action No. 45471, Exh. 3[a].) [2]

The motion for remand is hereby denied. Plaintiffs' contention that the tactics and strategy employed by S.P. as delineated above were designed to deprive them of the benefits of the alternative service may properly be addressed to the P.U.C. in the proceeding now pending before this regulatory body.

The authorities submitted by plaintiffs in support of the motion to remand have been considered (W. S. Butterfield Theatres v. F. C. C., 4 Cir., 237 F.2d 552; Jarman v. United States, D.C., 219 F.Supp. 108, 118–119). Butterfield, perhaps, would be persuasive if the S.P. had not relented in its original position. However, as it now appears, S.P. has seen fit to abandon the application for elimination of station stops, thus restoring to some extent its original position with respect to service in the main line for train 134.

It is manifest from the transcript of the proceedings before this court that the P.U.C. has been vocal and vigilant in attempting to preserve reasonable regularity of service for the commuters (supra, testimony of Nichols).

The presumption must be engaged in that the P.U.C. will continue with the same vigor as in the past in recognizing the established rights of the commuters and that all necessary and proper remedies will be afforded them. (Cf. People v. Globe Grain & Milling Co., 211 Cal. 121, 294 P. 3; Butterworth v. Boyd, 12 Cal.2d 140, 82 P.2d 434, 126 A.L.R. 838; Southern Pacific Company v. Public Utilities Commission, 41 Cal.2d 354, 260 P.2d 70)

Accordingly, the order of the Interstate Commerce Commission herein under attack must stand and the above entitled cause be, and the same hereby is, dismissed, and the temporary restraining order set aside and discharged, each side to bear own costs.

2. Southern Pacific Company in its closing letter memorandum asserts in this connection:
"The alleged change in circumstances as showing what Mr. Rosen refers to as the 'unlawful conduct and bad faith of Southern Pacific Company' has, in fact, been thoroughly considered by the Interstate Commerce Commission and determined not to exist. That identical contention was made on petition for reconsideration before the Interstate Commerce Commission, and in Southern Pacific Company's reply, dated November 6, 1963, we pointed out in detail that Southern Pacific Company had fully kept its representations that its trains Nos. 129 and 132 would operate over its main line via Mountain View and that the application pending before the California Public Utilities Commission, even if granted, would not change that circumstance but would only renumber train No. 132 to train No. 134."