[Civ. No. 19744.   Second Dist., Div. One.   Dec. 22, 1953.]

RUTH STOKES et al., Appellants, v. COUNTY CLERK OF LOS ANGELES COUNTY et al., Respondents.

Richard W. Petherbridge and Daniel G. Marshall for Appellants.

Edmund G. Brown, Attorney General, Henry A. Dietz, Assistant Attorney General, Howard S. Goldin, Deputy Attorney General, Harold W. Kennedy, County Counsel, and Earl O. Lippold and John B. Anson, Deputy County Counsel, for Respondents.

DRAPEAU, J.—By the instant proceeding in mandamus, petitioners sought from the superior court an order compelling the county clerk of Los Angeles County to issue to them a license to marry and a certificate of registry of mar-

riage, pursuant to section 69 and 69a of the Civil Code, respectively.

When petitioners applied for the license to marry, they declined to state their color or race in the spaces provided therefor on the application, or to make any declaration with respect thereto. As a result, respondent clerk refused to issue the license and the accompanying certificate of registry.

The petition for an alternative writ of mandate was denied in the superior court. This appeal is from the minute order which followed.

Section 69, Civil Code, provides: "All persons about to be joined in marriage must first obtain a license therefor, from a county clerk, which license must show:

"1. The identity of the parties.

"2. Their real and full names, and places of residence.

"3. Their ages; and

"4. Whether white, Mongolian, Negro, Malayan or mulatto. . . ."

Section 69a, Civil Code, provides: "All persons about to be joined in marriage must obtain from the county clerk of the county in which the license is issued, in addition to the license therefor provided for in Section 69 of the Civil Code, a certificate of registry of marriage as provided in Section 10526 of the Health and Safety Code containing the items therein listed. . . ."

Section 10526, Health and Safety Code, requires that the form of the certificate of registry of marriage "shall be prescribed by the State Registrar and shall contain among other matters as near as can be ascertained: . . .

"(b) The race, color, age, name and surname, birthplace and residence of the parties married. . . ."

The certificate of registry accompanies the application for a marriage license. Apparently, for the purposes of convenience and efficiency, the county of Los Angeles has combined the two documents into one form.

Appellants first urge that disclosure of their race or color on a license to marry and on a certificate of registry would restrict or inhibit their freedom of religion and liberty of conscience. Also, that such disclosure would deprive them of their liberty to marry in violation of the due process and equal protection of the law clauses of the Fourteenth Amendment to the federal Constitution.

In support of these claims, appellants rely upon *Perez* v. *Sharp*, 32 Cal.2d 711, 715, 717 [198 P.2d 17]. In that case,

the Supreme Court held unconstitutional the California miscegenation statute (Civ. Code, § 60), which prohibited marriage between white persons and Negroes, Mongolians, member of the Malay race or mulattoes.

It was there declared: "Marriage is . . . a fundamental right of free men. . . . Since the essence of the right to marry is freedom to join in marriage with the person of one's choice, a segregation statute for marriage necessarily impairs the right to marry."

Nonetheless, the court recognized the propriety of regulating conduct for the protection of society where such regulation was not discriminatory even though it might indirectly affect religious activity, when it stated at page 713:

"The provision of the First Amendment to the Constitution of the United States that Congress shall make no law 'respecting an establishment of religion, or prohibiting the free exercise thereof' is encompassed in the concept of liberty in the Fourteenth Amendment. State legislatures are therefore no more competent than Congress to enact such a law. (*Cantwell* v. *Connecticut*, 310 U.S. 296, 303 [60 S.Ct. 900, 84 L.Ed. 1213, 128 A.L.R. 1352].) *They may, however, regulate conduct for the protection of society, and insofar as their regulations are directed towards a proper end and are not unreasonably discriminatory, they may directly affect religious activity without infringing the constitutional guarantee. Although freedom of conscience and the freedom to believe are absolute, the freedom to act is not.* (*Cantwell* v. *Connecticut, supra*, at pp. 303-304.)

"The regulation of marriage is considered a proper function of the state." (Emphasis added.)

In *Butterworth* v. *Boyd*, 12 Cal.2d 140, 152 [82 P.2d 434, 126 A.L.R. 838], an attack was made on a charter provision establishing a health service system for city employees. The suggestion was made "that the plan interferes with the freedom of religion, on the ground that it provides an exemption for employees believing in healing by prayer, and requires the employee to disclose his religion by filing of the affidavit making the exemption claim."

It was there held: "It seems unnecessary to point out that there is no interference with the practice of religion in the mere disclosure of a particular faith to a board which has nothing to do with its practice. In no way does the charter permit the slightest interference with the practice or belief

in any religious faith. (See *Hamilton* v. *Regents of University of California,* 293 U.S. 245 [55 S.Ct. 197, 79 L.Ed. 343].)"

The statute under consideration places no limitation on the right to marry. It merely requires persons applying for a marriage license to disclose certain information for statistical and identification purposes. The requirement applies equally to all persons of every race or color and makes no attempt to discriminate between races.

And, as pointed out by respondent county clerk, the certificate of registry is part of the state-wide programme of vital statistics under the supervision of the State Department of Public Health which is charged with the uniform and thorough enforcement of division 9 of the Health and Safety Code, which covers birth (§§ 10150-10330), death (§§ 10350-10501), and marriage registration (§§ 10526-10536).

██ "It is within the legislative power to regulate and require a certain procedure and form in the celebration of marriages. . . . The fact that a requirement for the registration of marriages constitutes a proper exercise of the police power is conceded. The matter is not one of local concern only, but it is of general public importance." (35 Am.Jur. pp. 188, 198, §§ 15, 27 (Marriage).)

Along this same line, it was said in *Perez* v. *Sharp, supra,* (32 Cal.2d 711, 736): "It is, of course, conceded that the state in the exercise of the police power may legislate for the protection of the health and welfare of the people and in so doing may infringe to *some* extent on the rights of individuals." (Emphasis included.)

As stated in *People* v. *Western Fruit Growers,* 22 Cal.2d 494, 499 [140 P.2d 13], "The principle is universally recognized that all presumptions and intendments are in favor of the constitutionality of a statute and all doubts should be resolved in favor of its validity. (*Ray* v. *Parker,* 15 Cal.2d 275, 280 [101 P.2d 665]; *Jersey Maid Milk Products* v. *Brock,* 13 Cal.2d 620, 636 [91 P.2d 577].)"

And in *Borden's F. P. Co.* v. *Baldwin,* 293 U.S. 194, 209 [55 S.Ct. 187, 79 L.Ed. 281, 288], a suit for injunction against enforcement of a statute on the ground of its unconstitutionality, the Supreme Court of the United States said: "When the classification made by the legislature is called in question, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of the existence of that state of facts, and one who assails the classification must carry the burden of showing by resort to common knowledge or other

matters which may be judicially noticed, or to other legitimate proof that the action is arbitrary. . . . The principle that the State has a broad discretion in classification, in the exercise of its power of regulation, is constantly recognized by this Court.''

■ Moreover, ''Whether the legislation is wise or unwise as a matter of policy is a question with which the courts are not concerned.'' *Home Bldg. & Loan Assn.* v. *Blaisdell,* 290 U.S. 398, 447-448 [54 S.Ct. 231, 78 L.Ed. 413, 434, 88 A.L.R. 1481].

Pursuant to the various sections of the Health and Safety Code, the Legislature of this state has set up a comprehensive system by which to identify its inhabitants and to accumulate statistical information concerning them. Information as to color or race is required to be shown not only in marriage certificates but also in birth and death certificates.

And, as urged by respondents Registrar and State Department of Health, ''information as to the items of color or race are both valuable and necessary for the State to amass information as to population, birth and death rates and trends, and the relationship of color or race to factors of mortality, morbidity, fecundity, public health and matters or problems of social interest. For example, it has been contended that certain races are more susceptible to certain diseases which in turn requires special health precautions. Certainly, it is a legitimate function of State government to amass statistics designed to verify or disprove a relationship between an individual's race or color and such individual's susceptibility to disease.''

■ In the light of the foregoing, the conclusion is irresistible that the information required by section 10526(b), Health and Safety Code, is a valid exercise of police power and does not constitute an invasion of constitutional rights.

Appellants urge that the demanded information is without reasonable relation to any purpose within the competency of the state.

This point is without merit. This court has reached the conclusion that the disputed provisions of the statute constitute a valid exercise of the police power and that it is reasonably necessary for the public welfare to accumulate information as to race and color for legitimate identification and statistical purposes.

It is also urged that the demanded information, if supplied, would be meaningless, vague and uncertain.

As stated in 41 California Law Review, 523, at 534: "It would seem that the void for vagueness rule has taken only its initial step in California. There are no hard and fast rules which can be relied on in the close cases. The decisions would seem to be a result of measuring the many factors and considerations pointed out above. About the only safe generalization is that it takes a very vague statute to invoke the rule."

As hereinbefore mentioned, section 10526(b), Health and Safety Code, requires that the parties state their race or color "as near as can be ascertained." No penalty is exacted for being wrong or not 100 per cent accurate. The vast majority of people know their race. Those few who are uncertain may state it as nearly as they can ascertain it. That there may be varied evaluations of race or color among individuals only serves to illustrate the freedom of choice permitted in making such an evaluation. A lack of uniformity goes only to the weight of the statistical information obtained but does not invalidate the right of the state to acquire the information.

Appellants finally submit that the disputed requirement as to race and color violates Act 7971a (Stats. 1949, ch. 1578), as set out in 3 Deering's General Laws (1949 Pocket Supp. p. 110):

"Sec. 1. . . . The inclusion of any question relative to an applicant's race or religion in any application blank or form required to be filled in and submitted by an applicant to any department, board, commission, officer, agent or employee of this State, is hereby prohibited.

"Any person who violates this section is guilty of a misdemeanor.

"Sec. 2. . . . Any provision of law which is inconsistent with this act is hereby repealed."

This act was placed in General Laws under the subdivision "State Employees" immediately succeeding Act 7971, the "Salary Increase Act." However, said Act 7971a (Stats. 1949, ch. 1578) was repealed and codified into the Government Code as section 8400 by Statutes 1953, chapter 170, page 1091. The new section omits the provision of Act 7971a which repealed any law inconsistent therewith.

The obvious purpose of these two statutory enactments was to prevent discrimination against applicants for employment with the state. However, since no discrimination is involved in requiring a disclosure of race or color from all persons applying for a marriage license, this court is of the opinion that neither Act 7971a nor section 8400 was intended

to apply to the situation covered by section 10526(b), Health and Safety Code.

For the reasons stated, the order appealed from is affirmed.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied January 11, 1954, and appellants' petition for a hearing by the Supreme Court was denied February 17, 1954. Carter, J., was of the opinion that the petition should be granted.