[Civ. No. 644.   Fifth Dist.   Sept. 16, 1966.]

PATTERSON JOINT UNIFIED SCHOOL DISTRICT et al.,
Plaintiffs and Appellants, v. THE STATE BOARD OF
EDUCATION et al., Defendants and Respondents.

Richard H. Perry for Plaintiffs and Appellants.

Thomas C. Lynch, Attorney General, Richard L. Mayers, Deputy Attorney General, Jensen & Underwood and J. Wilmar Jensen for Defendants and Respondents.

CONLEY, P. J.—This litigation tests the legality of two alleged joint unified school districts on the west side of Stanislaus and Merced Counties. As of March 9, 1965, the date of the first election hereinafter referred to, the school districts involved, starting at the north, were as follows:

In Stanislaus County:

1) Patterson Joint Unified School District, including as components the former Patterson School District and Harney School District (located in Santa Clara County);

2) Orestimba Union High School District of which the component parts were Newman Elementary School District and Bonita Elementary School District.

In Merced County:

3) Gustine Union High School District of which the components were Gustine Elementary School District and Romero Elementary School District.

Two school elections are involved in the litigation: (1) the first, a vote taken by the qualified electors of Bonita Elementary School District, which occurred on March 9, 1965, and which, as claimed by the plaintiffs, resulted after necessary subsequent action by the Board of Supervisors of Stanislaus County in a merger of the Bonita Elementary School District with the Patterson Joint Unified School District; (2) the second, an election planned for December 14, 1965, which the present complaint for an injunction sought to prevent, through which the voters of Orestimba, Newman, Gustine and Romero in addition to the protesting Bonita District attempted to incorporate all of their territory in a new joint unified school district.

One or the other of the procedures must be held sound; for Bonita cannot be, at the same time, an essential part of Patterson Joint Unified School District and of the new joint unified school district comprising Orestimba and Gustine. The essential issue to be determined in this suit is: What is the joint unified school district to which Bonita belongs?

On October 28, 1965, in view of the then approaching election of December 14, 1965, for the announced purpose of including Bonita in the proposed new joint unified school district, consisting of Orestimba Union High School District (of which Newman and Bonita were components) and Gustine Union High School District (of which Romero and Gustine were components), the plaintiffs, Patterson Joint Unified School District (allegedly consisting of Patterson and Harney, as well as Bonita) and the Bonita Elementary School District brought this suit in an attempt to enjoin the holding of the election, and to have it declared that the formation of the proposed new joint unified district was for all purposes void by reason of the fact that Bonita had already become a portion of Patterson Joint Unified School District as a result of the election on March 9, 1965. The defendants named were the State Board of Education, Fred C. Beyer as County Superintendent of Schools of Stanislaus County, Floyd Schelby as County Superintendent of Schools of Merced County, Orestimba Unified School District of Stanislaus County, also known as Orestimba Union High School District, Newman School District of Stanislaus County, as a component of Orestimba Unified School District, Gustine Unified School District, also known as Gustine Union High School District, and Romero School District, a component of Gustine Unified

School District. Orestimba and Gustine were specified as unified school districts on the theories hereinafter set forth.

The complaint contains two causes of action. The first alleges that at all pertinent times Patterson Joint Unified School District has been, and is, a state agency and that Bonita School District has been, and until July 1, 1966, would be, a state agency; that each of the plaintiffs holds and administers school funds and property as a trustee for the State of California; that by an election regularly held theretofore, the voters of the Bonita School District voted to annex to, and become a part of, Patterson Joint Unified School District; that the result of the election was certified to the Board of Supervisors of Stanislaus County and that body voted to annex Bonita School District to Patterson for the purposes specified in section 1703 of the Education Code on April 20, 1965; that ever since, the Bonita District has been a part of the Patterson District. The pleading alleges that until July 1, 1966, Bonita would be an operative and existing school district and a territorial component of Patterson, on which date Bonita would cease to exist save for purposes specified by law for former districts. It is then said that the annexation resulted in the boundaries of Newman School District becoming coterminous with the boundaries of Orestimba Union High School District, and that by reason thereof a unification occurred; that Orestimba, consequently, is a unified school district pursuant to the provisions of the Education Code and effective for the purposes specified in section 1703 of the code, and that it would become effective for all purposes on July 1, 1966; that until said last mentioned date Newman would be a territorial component of Orestimba; that by reason of the annexation of defendant Romero School District, pursuant to an election conducted therein on April 20, 1965, it was annexed to Gustine Union High School District and, consequently, Gustine is also a unified school district with the authority and status alleged with respect to Orestimba.

The complaint further alleges that the defendant, State Board of Education, is the duly elected, qualified and acting board for California; that Fred C. Beyer is the Superintendent of Schools of Stanislaus County; that Floyd Schelby occupies a similar position in Merced County; that the State Board of Education, purporting to act within the scope of its authority and jurisdiction, directed defendants Beyer and Schelby to call simultaneous unification elections in school

districts denominated Bonita, Newman, Romero, Orestimba Union High School District and Gustine Union High School District for the purpose of determining whether the territory of all specified districts should be included in a new joint unified district; that the proposed unification would include Bonita, which the pleading alleges was then an integral part of another joint unified school district, to-wit: Patterson, and that the state board, in this connection, wholly failed to recognize the fact that Bonita became annexed to, and was included in, the Patterson Joint Unified District; that, pursuant to the directions of the state board, the superintendent of schools in each of the two counties of Stanislaus and Merced called an election for that purpose [to be held December 14, 1965], and that, among other things, plaintiff Bonita would have to expend for that purpose the approximate sum of $400; that plaintiff Patterson, through its governing board, accepted in due course the annexation agreement of plaintiff Bonita, and that "such annexation was in the best interest of the welfare of the pupils, residents, and taxpayers of each such district"; that the plaintiffs had no plain, speedy and adequate, or any remedy, unless the court should issue an injunction to prevent the unification election; that the last-mentioned election, if held, and if the vote should be affirmative for constituting the new unified district, would cast doubt upon the employment of teachers and classified employees by plaintiff Patterson for the year of 1966-67, beginning July 1, 1966; that the voters in Bonita were insufficient in number to defeat the proposed unification, and if the election were carried affirmatively over Bonita's objections, then it would be included at the same time in two joint unified school districts, and serious doubt and uncertainty would exist as to which governing board legally would control Bonita territory, which county superintendent of schools had jurisdiction over it and "in which district the electors of Bonita [would be] entitled to vote on bond, trustee, tax increase and other school district elections, all to the detriment and great and irreparable injury of the employees, electors and taxpayers of said plaintiff Bonita, and the pupils in said territory; that further, the governing board of plaintiff Patterson [would] be unable to determine whether to include anticipated tax receipts from Bonita territory in the Patterson school district budget, and [would] be otherwise impeded in the formulation of comprehensive plans for the operation of the Patterson unified school district to the detri-

ment and irreparable injury of the electors and taxpayers of plaintiff Patterson, including those in the Bonita territory."-

The second cause of action demands that the defendants recognize the validity of the election of March 9, 1965, by which Bonita allegedly became a part of Patterson and holds that they have no right to disregard a reorganization of school districts by such a valid, completed election.

Paragraph 4 of the second cause of action alleges: "That Petitioner Bonita is a part of a unified school district and Respondents have no jurisdiction to call, hold or conduct a unification election therein, nor to expend public monies for the purpose of calling, holding or conducting any such election, nor to direct Petitioners, or either of them to do so."

The prayer of the complaint asks that the election which was set for December 14, 1965, be enjoined and, also, for a remedy more extensive, namely, that defendants be permanently enjoined "from the doing of any act, directly or indirectly, in derogation of, or inconsistent with, or impugning the validity of, or ignoring or disregarding that certain annexation of plaintiff Bonita to plaintiff Patterson alleged in this complaint."

The court originally issued a preliminary restraining order and an order to show cause why a temporary injunction should not issue. The partial hearing on November 12, 1965, occupied the greater part of one day; it then became apparent to the trial court that arguments could not readily be completed by both sides until a later date, and the court expressed concern that necessary preparations for the December 14 election could not be completed by the authorities if the preliminary restraining order were meanwhile maintained; it was the agreement of everybody concerned, reached somewhat informally, but as it seems from the record, conclusively, that the preliminary restraining order should be set aside with the understanding, however, that a new date would be agreed upon for the completion of the arguments, and that the court would then, if possible, by December 1, 1965, make a ruling which would either permit or prevent the holding of the election. Accordingly, the preliminary restraining order was set aside and hearing of the arguments was continued to November 22, 1965; it was the understanding of all concerned that a complete ruling on the issues involved would be made in ample time to permit, or prevent, the election. While various demurrers were never ruled upon, an answer by agreement was nevertheless filed by the Merced County Superintendent of

Schools, Gustine Unified School District and Romero School District, which placed all questions at issue. The case was thoroughly argued and finally submitted on November 22. On December 3, 1965, the trial court filed a comprehensive memorandum at which time it ordered: "For all of the foregoing reasons, the court concludes that the proposed annexation of Bonita School District to Patterson Joint Unified School District of March 9, 1965 is null and void; and plaintiffs' request to enjoin and prohibit the pending election scheduled for December 14, 1965, should be and the same is hereby denied forthwith."

On December 10, 1965, the plaintiffs filed a notice of appeal "from the decision, order and judgment of the above-entitled Court, heretofore entered on December 3, 1965, . . ." The election was held and it is conceded that on an overall consideration of the vote in the entire territory (Bonita, however, voting *contra*) the proposed district was approved. On January 10, 1966, findings of fact and conclusions of law were filed, as well as a formal judgment, from which an appeal was also taken by plaintiffs.

The complaint in the case had two aspects. One was the specific attempt to enjoin a proposed election set for December 14, 1965; the other tendered issue was the request for a declaration that the previous attempted joinder by Bonita to Patterson was effective and that the attempt by the proposed election on December 14, 1965, to form a new joint unified district was, therefore, a nullity. The appellants seem to have overlooked the somewhat informal agreement on the part of everybody concerned made on the first day of the argument that the entire case should be submitted and decided and suggest that this first appeal alone is to be considered.

The denial of the injunction made by the trial court on December 3 may properly be considered a ruling on the temporary injunction, in which case it was an appealable order. (Code Civ. Proc., § 63, subd. 2.) Of course, an appeal, to be decided after the actual holding of the election, would be moot. No election can ever be enjoined after it has already taken place; therefore, the appeal from the denial of a temporary injunction must be dismissed as moot.

In view of the agreement of all parties that the entire litigation should be considered and passed upon by the court, the filing of findings of fact and conclusions of law and the judgment was appropriate and necessary. The judgment in its

present form is, on its face, only a partial decision of the litigation in that it is restricted to the election only, saying that "the plaintiffs' request to enjoin and prohibit the pending election scheduled for December 14, 1965, be, and the same is hereby, denied forthwith." The judgment, therefore, must be amended as to form in order to cover paragraph 12 of the conclusions of law "that Bonita School District's attempted annexation to Patterson Unified District was, and is, null and void."

The viewpoints and arguments of the several parties to the litigation, briefly summarized, are as follows:

1) The plaintiffs, Patterson Joint Unified School District and Bonita, maintain that, pursuant to part 1, division 5, chapter 3 of the Education Code, the Patterson District and the Bonita District alone had a right to initiate and carry out their proposal for a joinder, notwithstanding the fact that Bonita then was, and had been since the year 1905, a part of the Orestimba Union High School District and a component district thereof, without first legally separating from Orestimba and without the consent of that district, or the approval of any paramount authority. Section 2091 of the Education Code provides: "Any district may be annexed to a contiguous district of the same kind so that the annexed district ceases to exist and its territory is merged with and becomes a part of the annexing district." Section 2092 states: "An elementary or high school district may be annexed to a contiguous unified district so that the annexed district ceases to exist and the territory is merged with and becomes a part of the annexing district." Section 2095 provides: "An annexation action pursuant to this chapter is initiated upon the filing with the county superintendent of schools of a petition for annexation and an *agreement* to the *annexation.*" (Italics added.)

Twenty-five percent of the registered voters of Bonita, or a majority of the members of the governing board, must sign the petition for annexation, pursuant to section 2096 of the Education Code. It is further provided, in section 2097, as follows: "The agreement to the annexation shall be signed by a majority of the members of the governing board of the district to which annexation is proposed. It shall set forth any terms or conditions for the annexation which may have been agreed to by the governing boards of the districts affected thereby. If terms or conditions are included in the agreement, it shall be signed by a majority of the members of each governing board agreeing thereto."

Section 2098 refers in some detail to the technicalities of the election. There is no question that if the Bonita District had the right to proceed under this chapter, notwithstanding the fact that it was then, and for more than 50 years had been, a part of the Orestimba High School District, the election was properly held and the subsequent approval by the Board of Supervisors of Stanislaus County was properly secured. The essential question is whether or not Bonita was one of the class of districts referred to in chapter 3 in view of its long joinder as a component part of the Orestimba High School District; a subordinate question inheres in the provision concerning the agreement with the other districts ''affected thereby'': was it required as a condition to the integration between Bonita and Patterson that terms protecting the Orestimba District should be included and approved by signature of the Orestimba District? The plaintiffs contend, and we think properly, that if there has been compliance by Bonita and Patterson with the requirements of the Education Code with respect to the annexation to a joint unified district such enlargement of a joint unified district would take precedence over later action of the State Board of Education in its attempt to incorporate the territory of Bonita in a separate joint unified district by the election of December 14, 1965.

2) The respondents, Orestimba, Newman and Gustine, prevailing parties at the December 14 election, claim that Bonita is a part of their new joint unified school district, contending that chapter 3 of the Education Code was never applicable to the attempt of Bonita to be annexed to Patterson in that chapter 3 applies only to single districts for annexation purposes and that it was not intended by the Legislature that Bonita could wholly disregard its alliance of over 55 years with the Orestimba High School District; they contend that the effort of Bonita to become a part of the Patterson Joint Unified School District was null and void from the start. Not only do they claim that chapter 3 of the code was intended to apply solely to an independent and unattached elementary school district, but they also argue that if they are wrong in that assumption, chapter 3, in any event, requires an agreement with Orestimba and that a district in the position of Orestimba must necessarily sign an agreement with Bonita and Patterson authorizing the withdrawal from Orestimba and the joinder with Patterson before such a result could legally be attained. Those respondents point out that they believe the

court is right in saying that chapter 4 of part 1, division 5 of the code, rather than chapter 3, applies to the situation, but that if chapter 4 is not binding then there is no part of the Education Code which is applicable and, consequently, that the attempt made by Bonita to become merged with Patterson was wholly unauthorized by law and ineffectual. In addition, those respondents point out what they claim to be vital defects in the proceedings in that the educational authorities of Santa Clara County, as well as Stanislaus County, were not officially consulted, and that references of the proposal were not preliminarily made to the boundary commissions of Merced and Santa Clara counties. In view of our conclusion concerning the first of the points urged by these respondents, it will be unnecessary to attempt to unravel these other two contentions.

3) Although not completely abandoning the position taken by the other respondents, the State Board of Education contends that chapters 9 and 10 of part 1, division 5 of the Education Code make it requisite that even though the joinder of Bonita and Patterson should be considered proper in every respect, the State Board of Education, acting in line with the recommendation of the Merced County Committee on School District Organization, had a right to disregard the earlier joinder of Bonita with Patterson, and through the December 14 election, to withdraw the Bonita territory from the Patterson District and incorporate it in another joint unified district, which included Orestimba, Newman and Gustine.

We cannot accede to this argument. ▉ While it is clear that under the Constitution public schools are of statewide interest, and that the Legislature has plenary power to set up school districts in any manner in which it sees fit (*Hall* v. *City of Taft,* 47 Cal.2d 177 [302 P.2d 574]; *Casmalia School Dist.* v. *Board of Supervisors,* 180 Cal.App.2d 332 [4 Cal.Rptr. 656]), still the Legislature has not done so here; there is no specific statement anywhere in the Education Code which makes the state board's actions superior to, and controlling over, the considered conclusion of the voters in the enlargement of a unified school district. What the Legislature might do is one thing—what the Legislature has done is another, and if the annexation by Patterson of Bonita in the March 1965 election was effective and in accordance with the law as it existed, then it is our conclusion that the Merced County Committee and the State Board of Education would have had

no right to break up the Patterson Joint Unified School District in the fashion adopted.

The trial court determined that the plaintiffs were not entitled to proceed under chapter 3 in that it was not intended by the Legislature as applicable to an elementary district which was already part of another district, in this case, a high school district. As previously noted, Bonita had been a component with Newman of the Orestimba High School District since the year 1905. Without so much as a "by-your-leave" addressed to the Orestimba District, it applied to Patterson, as above stated, to be made a part of the Patterson Joint Unified School District. There was no tender to Orestimba of any agreement approving this procedure or providing in any way for its future or that of its high school pupils. The trial court was of the opinion that part 1, division 5, chapter 4, rather than chapter 3, was applicable to the situation. That chapter comprises sections 2191 and 2198 of the Education Code. Section 2191 provides: "An elementary district may be transferred from one high school district to another and a high school or unified district may be transferred from one junior college district to another pursuant to this chapter."

The other sections in chapter 4 require a petition signed by 25 percent of the registered electors residing in the component district or by the governing board of the high school or junior college district of which the component district is a part with an agreement to transfer signed by a majority of the members of the governing board of the high school, or junior college, district to which it is proposed to transfer the component district, the transmittal of the petition to the secretary of the State Board of Education, a notice of hearing, and an approval or disapproval by the State Board of Education, followed by an election if the state board approves the proposed transfer. The succeeding election would be held in the district "as determined by the State Board of Education." (See sections 2192 and 2198, inclusive.) ▮ The appellants contend that chapter 4 was not applicable, because this factual situation does not involve the transfer of an elementary district from one high school district to another, but rather a transfer or annexation of an elementary school district already a part of a union high school district to a joint unified district. It appears to us that the appellants' observation is sound and that chapter 4 does not apply to the specific situation.

It should be remarked at this stage that the code seems to

contain a hodge-podge of provisions; everything may be found in it except simplicity and clarity. The characterization of the school law made many years ago by Presiding Justice Finch in *Horton* v. *Whipple*, 58 Cal.App. 189, 190 [208 P. 356], is unfortunately still true: "At the outset it may be observed that any attempt to apply literally all the various provisions of the school law would lead to hopeless confusion. As said in *Chico High School Board* v. *Supervisors*, 118 Cal. 115, 122 [50 P. 275, 277] 'we have found it difficult to harmonize all the different clauses relating to the school system so as to give effect to the whole, and were we inclined to cavil, abundant cause might be found therefor in some of our school legislation.' Many laws, general in character, seem to have been designed to govern high school districts of a particular kind without reference to the relation of such laws to other laws covering the same subject matter. Other provisions which, from the nature of the subject matter thereof, ought to have been general in their application are limited to the proceedings under the particular laws in which they are embraced.''

■ The essence of the court's viewpoint, irrespective of chapter 4, is that Bonita is not granted authority by chapter 3 to initiate a move for annexation to Patterson, and that this is emphasized by the fact that there was no agreement tendered to, or signed by, Orestimba.

We believe that the trial court is right in its view that procedure under chapter 3 was not authorized in this instance; we cannot assume a legislative intention to permit a component member of a union high school district, without any relief from its existing status, to withdraw from one set of commitments and embrace another wholly inconsistent set.

This view is in accordance with the assumption and practice of the business and personal world in many similar situations. First of all, it is the usual custom in connection with other organizations as stated in the brief of respondents, Orestimba, Newman and Gustine: "In no case is it possible to so divide a district without either a hearing and determination by a superior body or with the agreement of the overall body of which a part is attempting to secede. We refer the Court to Section 26700, et seq. of the Water Code; Section 35250, et seq. of the Government Code; Section 32400 of the Health and Safety Code; and to the General District Law, section 58230, et seq.''

The same observation may be made with respect to the exercise of personal rights. Consider marriage for example. Al-

though section 56 of the Civil Code permits marriage to those "not otherwise disqualified," there is no detailed consideration given in the section to a set of hypothetical facts which may negate the right of marriage. With respect to the appointment of a guardian, it seems wholly unnecessary for the law to say that a guardian may be appointed for a minor or an insane person if there is not already a guardian. With regard to partnership, it is unnecessary to have a code section enunciating the patent fact that a new partnership cannot take over the property of a partner who has already placed it in an existing partnership, without terminating the obligations under the pending partnership. A person who wants a first lien on land that is already mortgaged is not in a position to get it until the old mortgage is taken care of in some legitimate way. ■ The same rule of reason should apply where a school district is part and parcel of a larger district; there must be a termination of the precedent relationship before a section or sections of the code may be relied upon to form new district relationships. Therefore, we endorse the viewpoint of the trial judge that chapter 3 was not applicable to the situation which obtained before and at the March 9, 1965, election, notwithstanding the apparent appropriateness of certain of the language contained in chapter 3. ■ We cannot hold that the Legislature would be guilty of such an intention; as the trial court's viewpoint is sound, we endorse it and, accordingly, hold that the attempt of Bonita to become a part of the Patterson Joint Unified School District was null and void. It would follow that the attempt to form the new joint unified district by the election of December 14, 1965, was effective.

The purported appeal from the order denying a temporary injunction is dismissed as moot. The trial court is directed to amend its judgment by the addition of language to make it clear that Bonita is not now, and never has been, a component part of the Patterson Joint Unified School District. The judgment is otherwise affirmed, the respondents to recover costs on appeal.

Stone, J., and McMurray J. pro tem.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 9, 1966.

---

*Assigned by the Chairman of the Judicial Council.