[Civ. No. 11649.   Third Dist.   June 19, 1968.]

SAN JOAQUIN DELTA JUNIOR COLLEGE DISTRICT et al., Plaintiffs and Appellants, v. STATE BOARD OF EDUCATION et al., Defendants and Respondents.

298

Richard W. Dickenson (San Joaquin), County Counsel, Robley E. George, Assistant County Counsel, and Richard H. Perry for Plaintiffs and Appellants.

Thomas C. Lynch, Attorney General, Richard L. Mayers, Deputy Attorney General, Milton Goldinger, County Counsel (Solano) and John M. Powers, Assistant County Counsel, for Defendants and Respondents.

PIERCE, P. J.—Certain electors (constituting, we will hold, a majority) of Rio Vista Joint Union High School District (High School District) petitioned to annex the district to petitioner-appellant San Joaquin Delta Junior College District (Delta District). The statutory method selected was that set forth in division 18.5, chapter 2, article 8 of the Education Code as then in effect. (Stats. 1963, ch. 100.) Article 8 comprises sections 25465-25468.[1] Delta District was willing, an agreement between High School District and Delta District was reached, other intermediate steps were taken, and on April 6, 1965, the Board of Supervisors of San Joaquin County made its order annexing High School District to Delta District. (Clarity will be served when we explain that High School District comprises territory in Solano and Sacramento Counties, and its boundaries are contiguous to Delta District located within San Joaquin, Alameda and Sacramento Counties.)

In September 1962 the Solano County Committee on School District Organization (Solano County Committee) had commenced a study to determine whether or not a new junior college district should be formed in Solano County. The plan which evolved contemplated a junior college district, the boundaries of which were to be coterminous with the Solano County boundaries. That meant a bifurcation of High School District to the end that that part within Solano County would

---

[1]All section references are to the Education Code unless otherwise noted.

be within the new Solano County Junior College District while the Sacramento County territory would be left out and in a status not discussed by the parties to this appeal. Although Solano County Committee had approved this plan on April 1, 1964, and on May 8, 1964 had transmitted it to the State Board of Education, it requested the state board to delay action on the plan for a year. On April 10, 1965, the State Board of Education approved the "Solano County plan." On April 20, 1965, the Solano County Board of Supervisors by resolution denied the validity of the annexation previously described; on August 5, 1965, the State Board of Education refused to rescind its approval of the "Solano County plan;" on October 5, 1965, an election was held in Solano County at which the results were 11,001 in favor of, and 3,274 against, the new Solano County Junior College District. It is to be noted, however, that the people within Rio Vista Joint Union High School District (only the Solano County residents voting, of course) voted nearly 15 to 1 *against* the plan.

On September 13, 1965 (before the Solano County election) a proceeding in mandamus was brought in the Sacramento County Superior Court by Delta District and by a resident of High School District against the State Board of Education, the Solano County Board of Supervisors and the Solano County Superintendent of Schools. A number of issues were raised. The matter was heard on a stipulated statement of facts plus a deposition. The trial court decided only one of the issues. It decided that there had been no valid annexation of High School District by Delta District because Education Code section 1681 had not been complied with. A writ was denied. On appeal from the judgment denying the petition for a writ our first concern is with the applicability of procedures set forth in that section and those *in pari materia*. Admittedly, those procedures were not followed by petitioners. We will hold that section 1681 (and the sections *in pari materia*) are inapplicable, that appellants complied with the steps necessary to effectuate the plan of annexation as set forth in sections 25465 et seq., and that a valid annexation with priority over the Solano County Committee plan resulted.

Explanation of the reasons why annexations under sections 25465 et seq. are incompatible with the methods contemplated by section 1681 will require an analysis of the two—completely separate—procedures.

An Analysis of Sections 25465 et Seq.

Section 25465 is in division 18.5 of the Education Code. That division is entitled "Junior Colleges [New]." It was enacted in 1963. (Stats. 1963, ch. 100, p. 736.)[2] The effect of the 1963 amendment, and its evident purpose was to place all matters pertaining to junior colleges in one new division where they were given comprehensive treatment, e.g., article 1 relates to their composition and organization; article 2 to their powers and duties, etc.; sections 25465-25468 comprise article 8, entitled "Annexation of High School Districts Upon Petition of Electors."[3]

The "electors" described in the title of said article 8 are *the electors of the high school district to be annexed.* (§ 25465.) They, and they alone, set in motion the machinery of the law by which annexation by this method is accomplished. Neither the electors of the junior college district to which the high school district proposes to be annexed nor any county officer, county board or county agency of the county or counties in which the high school district is located plays any role in the proceedings. (§§ 25465-25468.) And unless there is to be an assumption by the high school district of a pro rata portion of the bonded indebtedness of the junior college district *no election is contemplated.* (§§ 25466, 25466.5, 25467.) No public hearings are called for. Following are the *only* steps contemplated by article 8:

Under section 25465 (as it read at the time of those annexation proceedings) a "majority of the electors residing in any high school district contiguous to a junior college district, *in the same or adjoining counties*" are authorized to petition for the annexation of the high school district to the junior college district. (Italics ours.) The petition is presented to the superintendent of schools having jurisdiction over the junior college district.[4] The petition must "be accompanied by an

[2]Although a new division was written, much of the material therein, including the sections with which we are here concerned, was merely "lifted" from previous code sections, e.g., section 25465 is a restatement of former section 2621, and, generally speaking, sections 25465-25468 restate former sections 2621 through 2627 without significant, if any, changes.

[3]That is not the only article within the division on annexation of high school districts by junior college districts. Article 9 covers such annexation when instituted by petitions of junior college boards. *Article 10 (§§ 25476-25477.5) covers annexation of high school districts upon election.*

[4]Section 812.5 provides: "Whenever any school district is situated partly within two or more counties, jurisdiction over it is, unless otherwise provided in this code, in the county superintendent of schools of the

agreement, signed by a majority of the members of the governing board of the junior college district to which annexation is desired, and by a majority of the trustees of the high school district, consenting to the annexation and setting forth the terms of the annexation.''

As the next step the superintendent of schools verifies the signatures and determines their sufficiency. Upon that determination the petition and agreement above described are transmitted by the superintendent of schools with his recommendation to the board of supervisors of his county (i.e., the county having jurisdiction over the junior college district). (§ 25465.)

In the 1963 act section 25465.5 provided as follows: ''The board of supervisors, after receiving the petition and agreement, and the recommendation of the superintendent, may make an order annexing the high school district to the junior college district upon the terms agreed upon.''

(We skip sections 25466, 25466.5, 25467 and 25467.5. Those sections apply only where the agreement described provides by its terms for an assumption by the high school district of a pro rata portion of any bonded indebtedness of the junior college district. Since no such assumption of indebtedness was contemplated here, the sections are inapplicable.)

Section 25468 is ministerial. It directs the clerk of the board of supervisors to enter the latter's order of annexation in his record of junior college districts and to send a copy of the order to the county clerk of each county in which any part of the junior college is located so that they may make similar entries.

■ To summarize: Article 8 contemplates a complete scheme for the annexation to junior college districts by high school districts located in the same or different counties. ■ The plan has just five steps: (1) A petition is circulated among the electors of the high school district. *In such circulation county boundaries as such play no part.* (2) A bi-party agreement is entered into between the junior college district and the high school district covering the terms of annexation. (3) If a majority of such electors have approved the plan, the petition, together with the agreement, goes to one county

county in which the schoolhouse of the district is located, or, if there be a schoolhouse of the district in each of two or more counties, jurisdiction over the district is in the county superintendent of schools of the county in which the greatest area of the district lies.''

school district superintendent only—the one with jurisdiction over the junior college district. (See fn. 4, *supra*.) (In this instance the school superintendent of San Joaquin County had exclusive jurisdiction over Delta District.) (4) The county school superintendent checks the sufficiency of the petition and makes his recommendations which are then transmitted to his board of supervisors. (5) The last effectuating step is consideration by that board of the plan, agreement, petition and school superintendent's recommendation and upon approval thereof it may make an order of annexation.

## An Analysis of Sections 1681-1686

The provisions of the Education Code which in 1963 were embodied in section 1681 and those sections which follow it and which are *in pari materia* did not have their origin in that year. They were, however, amended by the 1963 Legislature, although in a separate statute (Stats. 1963, ch. 629). Sections 1681 through 1686 comprise article 3 of division 5. That division is entitled "Organization and Reorganization of School Districts [New]."[5] Article 3 is entitled "Organization and Reorganization of Districts Under the Jurisdiction of Different Counties." In 1963 section 1681 provided: "In any action to organize or reorganize districts so as to change the boundaries or status of one or more school districts under the jurisdiction of different county superintendents of schools, the proceedings to be conducted or the actions to be taken by county officers or agencies shall be conducted or taken concurrently in each of the counties except as provided in this article *or as otherwise provided by law*." (Italics ours.)

Under section 1682 a petition is mentioned. The section does not state who the petitioners are to be or to what class they belong other than to say that the petition's sufficiency shall be "determined jointly by the county superintendents who have jurisdiction over the elementary or unified districts in which any petitioners reside."

By section 1683 an election is called for. It was to be conducted by "each county superintendent" in the elementary or unified districts which are under his jurisdiction and in which the election is to be held. Joint action by those county superintendents fixed the date of the election, form and content of the ballot and declaration of the result.

---

[5] The term "organization and reorganization" was given statutory definition in section 1602 and includes " 'An action . . . ' to annex all or part of the territory of a district to another district."

Section 1684 provided that a public hearing or hearings could be substituted for an election by the joint action of "the county officers or agencies *required by law to make the decision.*" (Italics ours.) "Any decision . . . to grant or deny the proposed reorganization may be taken at or following a joint public hearing [or hearings]." (§ 1686.)

IMPOSSIBILITY OF RECONCILING SECTIONS 25465-25468 WITH SECTIONS 1681-1686

The 1963 enactment of article 3 of division 5 of the Education Code (§§ 1681-1686) does not provide a complete procedure for organization or reorganization of districts, rather it provides a structure which is to be superimposed upon organization or reorganization procedures set forth elsewhere in the code where the contemplated change happens to involve multi-county districts. Where the organization or reorganization plan itself expressly contemplates a situation involving more than one county and provides completely therefor section 1681 et seq. are superfluous. Article 8 of division 18.5 (§§ 25465-25468) provides a complete procedure to be applied where the districts involved are "in the same or adjoining counties." By the plan county lines were obliterated. Any attempt to combine the steps of sections 1681 through 1686 with the foregoing plan is impossible. The gears will not mesh. (1) The petition contemplated by the procedure described in sections 1681 through 1686 is a petition the sufficiency of which must be determined by the county superintendents having jurisdiction "over the elementary or unified districts in which *any* petitioners reside." Since High School District here is partly in Solano County and partly in Sacramento County and some of its petitioning electors reside in elementary school districts in each of those counties, to comply with section 1682 the County Superintendents of Schools of Sacramento and Solano Counties would be those to pass upon the sufficiency of the petition. But under section 25465 et seq. (which, as stated, contemplate districts in two counties) only the county superintendent of the annexing district is authorized to pass upon the petition. (2) As stated, sections 1681 et seq. contemplate either an election or a public hearing (of some undesignated sort). Sections 25465 et seq. contemplate neither. But sections 25465 et seq. do require an agreement between the two districts affected. Sections 1681 et seq. contemplate no agreement, and what sage trying to follow the steps of those sections would know what to do with the

agreement? (3) As stated, absent a pro rata assumption of the junior college bonded indebtedness by the high school district the article 8 (§ 25465 et seq.) procedure contemplates no election. But under article 10 of division 18.5 annexation by junior college districts of high school districts by the elective process is contemplated. (§§ 25476-25477.5; see fn. 4.) To attempt to tack the elective processes provided by section 1681 et seq. onto article 8 (§ 25465 et seq.) would therefore be to make the article confusingly duplicative of article 10 (§§ 25476-·25477.5).

It cannot be said the Legislature did not realize the points of irreconciliability we have noted. Nowhere does it declare that sections 1681 et seq. are intended to apply to sections 25465 et seq. proceedings. On the contrary, it has declared section 1681 et seq. do not apply where ''otherwise provided by law.'' For the courts to strain to try to make those sections apply would be an act of sheerest judicial legislation injudiciously wrought.

Our conclusion not thus to usurp the legislative function is fortified by admonitions from the Legislature itself. It will be remembered that the 1963 versions of division 18.5 and divi-that section 1681 et seq. are intended to apply to section were separately enacted. (Stats. 1963, ch. 100, and Stats. 1963, ch. 629, respectively.) The Legislature left no doubts as to which division it intended should prevail.

The following clause was included as the final section of chapter 629, Statutes 1963, page 1625: ''Sec. 53. If the provisions of Division 18.5 of the Education Code, as added by Senate Bill No. 78 of the 1963 Regular Session, conflict with the provisions of this act it is the intent of the Legislature that the provisions of Division 18.5 shall prevail.'' Essentially the same clause was repeated in chapter 1751, Statutes 1963, page 3503, to-wit: ''Sec. 27. In the event any provision of Division 18.5 of the Education Code as added or amended at the 1963 General Session conflicts with provisions of Divisions 4 and 5 of the Education Code, as added or amended at the 1963 General Session, it is the intent of the Legislature that the provisions of Division 18.5 shall prevail.''

Respondents contend that the argument for nonapplicability of section 1681 et seq. is weakened by the fact that section 25465 is a restatement of former section 2621 which prior to 1963 was found in the same division of the code as former section 1681. That arrow misses its mark. Section 1681 prior

to its amendment in 1963 was quite different in context. Moreover, the sections were no less conflicting before the amendment than thereafter. It is perhaps more accurate to say that one section is irrelevant to the other. But even if we were to base our decision upon irreconcilability rather than irrelevancy, we would still have to say that section 2621 must prevail over section 1681 either under the theory that in the interpretation of statutes a special provision prevails over a general (45 Cal.Jur.2d, Statutes, § 119, p. 628) or (since both sections were added by Statutes of 1959, ch. 2, p. 720, and § 2621 is the later section) upon the statutory construction aid that " [i]n cases of irreconcilable conflict between the various portions of the same statute, the later provision in point of position controls the earlier. . . ." (*Op. cit.* § 118, p. 627.)

It is also argued that a declaration of the applicability of section 1681 is necessary in the interest of "fairness." A quick answer to that argument is that courts may not question the wisdom of the Legislature in the enactment of constitutional statutes. (*Home Bldg. & Loan Assn.* v. *Blaisdell* (1934) 290 U.S. 398, 447-448 [78 L.Ed. 413, 434, 54 S.Ct. 231, 88 A.L.R. 1481] ; *People* v. *San Francisco* (1869) 36 Cal. 595, 601; *Stokes* v. *County Clerk of Los Angeles County* (1953) 122 Cal.App.2d 229, 233 [264 P.2d 959].) But we do not conceive section 25465 et seq. and the plan of annexation contemplated by article 8 of division 18.5 to be necessarily unfair. At least it is most natural that the parents of Rio Vista Joint Union High School District should prefer to send their children to the junior college of the Delta District located at Stockton rather than to either a present junior college located at Vallejo or a projected one at Rockville. A glance at the map will illustrate graphically the reason for that preference. It is also understandable why both Delta District and the proposed Solano County District battle greedily for the opulent High School District involved. One need only possess the haziest knowledge of the fiscal importance which the relationship of average daily attendance bears to assessed valuation as the formula by which the fiscal stability of districts through receipt of state and federal funds is determined to appreciate this. We presume the battle which rages between the have and have-not school districts is not entirely unrelated to the controversy over the "one man, one vote" concept. Excepting to say that in the polemics of school district organization, reorganization and annexation it seems to us that

county boundaries are artificial and irrelevant, we do not find it suitable for this court to join the lists.

We hold, therefore, that under the Education Code as amended in 1963 an annexation of a high school district to a junior college district, whether located in the same or different counties, could be effected by following the plan and steps provided in article 8 of division 18.5 (§§ 25465-25468), i.e., by an agreement-elector petition approved by the board of supervisors of the county having jurisdiction over the annexing junior college district and that provisions of article 3 of division 5 of said code (§§ 1681-1686), inconsonant therewith, have no application to such an annexation.

## COMPLIANCE WITH ARTICLE 8

Pursuant to section 25465 et seq. the county superintendent of schools having jurisdiction of the junior college district (in this instance Gaylord Nelson, San Joaquin County School Superintendent) was charged with the responsibility for determining the sufficiency of the electors' petitions, i.e., determining that the signatures represented a majority of the electors of High School District.

No statutory method is provided for determining such sufficiency. (An "elector" [see art. II, § 1, Cal. Const.] is not to be confused with a registered voter [see Elec. Code, § 21]. Generally all registered voters are also electors; the converse, however, is not true.)

The evidence before the court on the issue of compliance with this requirement was the stipulated fact statement and Superintendent Nelson's deposition. This material established that following receipt of the petitions Nelson requested letters from the respective county clerks of the two counties of residence of electors of High School District, certifying (1) to the number of voters registered in his county who had signed the petitions, and (2) to the total number of voters registered in his county residing within High School District. Also each component of the petition was accompanied by an affidavit of verification attesting, among other things, to the status of those signing the petition as electors residing within High School District.

Nelson applied a mathematical factor of 60 percent (representing the proportion of electors who were also registered voters) to the total number of registered voters in the district, shown by the information received, to be 2,501 (1,551 in Solano County; 950 in Sacramento County). The resulting

figure, 4,168, represented the total number of electors residing within High School District. The petitions contained the signatures of 2,113 electors, more than the majority necessary. The 60 percent factor had been selected by the superintendent after consultation with the San Joaquin County Clerk relative to the proportion of electors registered as voters at that time. That percentage was more conservative (i.e., resulted in a larger electorate, thus requiring more signatures to constitute a majority) than the factor cited by that official, 67 percent, and in fact was more conservative than the proportions actually demonstrated by the petitions.

We cannot conclude that the San Joaquin County Superintendent of Schools did not properly determine the sufficiency of the petition or that the San Joaquin County Board of Supervisors did not properly approve the superintendent's recommendation.[6]

PRIORITY OF PROCEDURES

The proceedings taken by Solano County Committee described at the outset of this opinion were taken under chapter 10 of division 5 of the Education Code as in effect in 1959 (Stats. 1959, ch. 1950) and in 1963 (Stats. 1963, ch. 100). Respondents contend that because the Solano County Committee had instituted studies for the annexation of High School District in 1962 and had formulated a plan in 1964 which it had transmitted to the State Board of Education in that year, it was first in time and therefore had exclusive jurisdiction over the annexation of High School District. A vital fact intervenes, destroying any validity that argument could have. On May 13, 1964, the Solano County Committee requested the State Board of Education *to delay action for one year, and, on June 12, 1964, the state board consented to that request.* During the period of requested delay, the electors' petition was circulated within High School District for its annexation to Delta District, the bi-party agreement was consummated, and on April 6, 1965, after the petition had been checked for sufficiency, and it and the agreement had been submitted to the San Joaquin County Board of Supervisors, the latter body made its order of annexation.

[6]In this regard it may be mentioned that the trial court reached the same conclusion. In its memorandum opinion the court stated: "The Court should note in passing that it believes there was substantial compliance with section 25465. . . ."

Respondents rely upon cases, the earliest of which is *People ex rel. City of Pasadena* v. *City of Monterey Park* (1919) 40 Cal.App. 715 [181 P. 825], and the latest of which appears to be *Fuller* v. *San Bernardino Valley Mun. Water Dist.* (1966) 242 Cal.App.2d 52, 60 [51 Cal.Rptr. 120], which hold that in organization and annexation proceedings involving municipalities or quasi-municipal agencies the first to institute the proceedings has exclusive jurisdiction. Assuming but not deciding that the rule is applicable to school districts, one would first have to determine when proceedings have been *instituted.* The cases do not hold that promoters of districts to be organized and annexed merely by filing a tentative plan, adoption of which may or may not later be sought, can thus preempt *the field of organization or annexation—nothing having been* done in fact to consummate the plan. Respondent's contention here is similar to that of the appellants in *Casmalia School Dist.* v. *Board of Supervisors* (1960) 180 Cal.App.2d 332 [4 Cal.Rptr. 656]. We borrow the language of Justice Fourt in replying thereto (on pp. 338-339): ''Such an interpretation would tend to defeat rather than further the legislative intent. The fact that the Legislature provided for more than one means of obtaining changes manifestly indicates that changes were to be facilitated, not impeded. To adhere to appellant's interpretation could result in a freezing of the status quo even though no further action was contemplated by the committee to effectuate the desired changes in boundaries.''

Nothing herein stated is intended as a holding that the ''rule of priority'' applies to the organization and annexation of school districts. The trial court did not so conclude.[7] In 1963 section 1703 provided: ''In any district which is created or whose boundaries or status is changed by an action to organize or reorganize districts, the changes shall be effective on the date the action is completed for the purposes set forth below:

''(h) . . . . The participation in any proceeding authorized by law for the . . . reorganization of the district.''

The Legislature in 1963 had evinced no intention to give annexation methods in which the State Board of Education was a participant priority over those methods in which it was

[7]In the footnote to its memorandum opinion already noted the trial court said: ''The Court should note in passing that it believes . . . the 'rule of priority' is not necessarily applicable to school district annexation proceedings.''

not. As was stated in another context in *Patterson Joint Unified School Dist.* v. *State Board of Education* (1966) 244 Cal. App.2d 921, at page 930 [53 Cal.Rptr. 751] : "[T]here is no specific statement anywhere in the Education Code which makes the state board's actions superior to, and controlling over, the considered conclusion of the voters in the enlargement of a unified school district. What the Legislature might do is one thing—what the Legislature had done is another. . . ." Here there was no specific statement in the Education Code making the state board's actions controlling over the considered conclusion of the electors of High School District acting in concert with an agreement between the governing boards of High School District and Delta District. When their action had received the approval of the Board of Supervisors of San Joaquin County annexation became complete.

Here the judgment of the trial court was based solely upon the determination that compliance with section 1681 et seq. was required. Reversal by this reviewing court would sometimes suggest a necessity to return the proceedings to the trial court for determination of other issues. Here, however, there is no dispute as to any of the facts. The sole issues are issues of law.

The judgment is reversed with directions to the Superior Court of Sacramento County to issue a writ of mandamus commanding respondents, State Board of Education and its members, to rescind the resolution approving the formation of a new junior college district in Solano County insofar as said district includes the territory of Rio Vista Joint Union High School District and commanding respondents, Board of Supervisors of Solano County and its members, to rescind the resolution of April 20, 1965, insofar as said resolution relates to Rio Vista Joint Union High School District, its money and/or other property; also commanding all respondents to recognize the annexation of Rio Vista Joint Union High School District to San Joaquin Delta Junior College District as complete and valid in all other respects.

Friedman, J., and Regan, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied August 14, 1968.